# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2476

_____

| | | |
|---|---|---|
| Theresa Spangler, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Federal Home Loan Bank of | * | Southern District of Iowa. |
| Des Moines, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 1, 2001

Filed:  January 30, 2002

_____

Before BYE, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Theresa Spangler, who suffers from depression, brought this action against the Federal Home Loan Bank of Des Moines ("the Bank") alleging the Bank's termination of her employment violated her rights under the Americans with Disabilities Act of 1990 ("ADA") and the Family and Medical Leave Act ("FMLA").  Spangler now appeals the district court's grant of summary judgment in favor of the Bank on both of her claims.  We affirm the district court's judgment on Spangler's ADA claim, but reverse as to her FMLA claim.

## I.    BACKGROUND

Theresa Spangler began working for the Bank in the Demand Services Department in 1982.  Spangler suffers from dysthymia, a form of depression, along with phobia and bouts of more intense depression.  Her former therapist first diagnosed Spangler with this mental illness in 1993.  At that time, Spangler took a six week leave of absence from the Bank and went through treatment.  Spangler's current psychiatrist also diagnosed Spangler with dysthymia in 1997.  At that time, she took another leave of absence to undergo treatment.  After her 1997 diagnosis, Spangler informed her supervisor that she took this leave to obtain treatment for her depression.  Spangler also recalls later telling a variety of other supervisors and Bank personnel about her depression.

The Bank's attendance policy allowed supervisors to excuse occasional absences due to illness or injury depending on the circumstances and on the employee's past attendance.  The Bank dealt with excessive absenteeism through counseling, warning, and, on occasion, termination if necessary.  Employees were to arrange time off for personal business and medical appointments in advance.  The Bank's FMLA policy required employees to request leave 30 days in advance or, if the leave was not predictable,  the employee needed to provide as much notice as was practicable.  The Bank posted this information about the FMLA in the employee break room and printed it on the back of employee time cards.

Bank records show a persistent pattern of absenteeism and tardiness throughout Spangler's employment with the Bank.  Spangler was absent for family or medical reasons for 32 days in 1993, 17.6 days in 1994, 12.4 days in 1995, and 29.3 days in 1996.

In 1997, as part of restructuring after the sale of the Demand Services Department, the Bank transferred Spangler and other employees to the main Bank. The Bank assigned Spangler a new position within the Member Financial Services

Department. During the transition, Bank management discussed Spangler's absence from the Bank at that time and depression as the cause of her absence. In July of 1997, a member bank[1] Spangler was responsible for providing with cash services complained that Spangler's absenteeism was interfering with its business. Some of Spangler's duties were then reassigned to another employee. One morning in September of 1997, Spangler left a voice mail message on a supervisor's machine in the morning stating she would not be at work that day, thus forcing the supervisor to do Spangler's work instead of attending a scheduled training session.

Throughout 1997 and 1998, Spangler's many unscheduled absences and her persistent tardiness were routinely noted by the Bank. Spangler used five days of unscheduled vacation for personal reasons from September 15 through 19, 1997. Each morning when she was absent, Spangler notified her supervisor by leaving a voice mail message. In September, Spangler was warned that she needed to be on time to work and to talk to someone instead of leaving voice mail messages when she was unable to make it to work. Her 1997 performance appraisal noted that her 21 absences that year were excessive and that absenteeism was a problem for Spangler.

In early January, Spangler again missed a string of days from work, each morning leaving messages she would not be in that day or she would be late, but then not arriving at work at all. Spangler was warned and put on a six-month probation during which she was not to be absent more than twice at the risk of termination. Spangler was absent twice during the probationary period. Immediately after the

_____

[1]A member bank is a customer of the Federal Home Loan Bank. Spangler's position in the Member Financial Services Department involved providing these institutional customers, i.e., the member banks, with cash for day-to-day operations. Spangler coordinated the movement of cash from the Federal Reserve to member banks in armored cars.

probation ended, Spangler had four unexcused absences in July and August of 1998. Due to more absences, Spangler was again put on probation on August 31, 1998. On September 15 she missed work because of transportation problems. The following day, a Bank employee noted in a memorandum to Spangler's manager that Spangler phoned and stated she would not be in that day because it was "depression again." On September 17, when Spangler had not yet arrived at work in the middle of the morning, and had not yet called with any explanation, Spangler's manager terminated her employment.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 678 (8th Cir. 2001). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

### A. Americans With Disabilities Act

The ADA bars employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, the appellant must establish that (1) her condition qualifies as a disability under the ADA definition, (2) she is qualified to perform the essential functions of her position with or without accommodation, and (3) she has suffered an adverse employment action because of her disability. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999). "The Act defines 'a qualified individual with a disability' as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" Toyota Motor Mfg., Ky., Inc. v. Williams, 122 S. Ct. 681, ___, 2002 WL 15402, at *7 (January 8, 2002) (quoting 42 U.S.C. § 12111(8)). Spangler's claim under the ADA fails because she

has not shown that she is "able to perform, with or without accommodation, 'the essential functions of the employment position [she] holds.'" Pickens v. Soo Line R.R. Co., 264 F.3d 773, 777 (8th Cir. 2001) (quoting 42 U.S.C. § 12111(8)).

This court has repeatedly held that "'regular and reliable attendance is a necessary element of most jobs.'" Pickens, 264 F.3d at 777 (quoting Greer v. Emerson Elec. Co., 185 F.3d 917, 921 (8th Cir. 1999) and Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 445 (8th Cir. 1998) and citing Moore v. Payless Shoe Source, Inc., 187 F.3d 845, 848 (8th Cir. 1999)). Moreover, "an employee who is unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones." Pickens, 263 F.3d at 777 (quoting Moore, 187 F.3d at 848) (alteration in original).

The duties of Spangler's position included taking daily phone calls, answering inquiries from other Banks regarding cash services, and completing transactions in a timely manner. The member bank customers of the Bank relied on Spangler's services for their daily cash needs. Spangler's absenteeism prevented her from performing these essential functions. Although her duties were sometimes reassigned to other employees of the Bank, reassignment prevented those employees from performing all of their duties. In any event, we have held "an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform." Maziarka, 245 F.3d at 681-82 (8th Cir. 2001) (holding an employee's requested accommodation for a later make up of the time missed for frequent leaves of absence was not a reasonable alternative). We accordingly affirm the district court's grant of summary judgment to the Bank on Spangler's ADA claim.

**B.      Family and Medical Leave Act**

Under the FMLA, an eligible employee is entitled to 12 workweeks of leave during any 12-month period if he or she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The definition of "serious health condition" includes a "mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

The rights Congress created under the FMLA are fundamentally different than those granted under the ADA.  One of Congress's purposes in enacting the ADA involved eliminating the discrimination qualified individuals with disabilities face in their day to day lives.  42 U.S.C. § 12101.  In contrast, the FMLA was created, in part, because of "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4).  While the ADA's protection is almost perpetual, lasting as long as the employee continues to meet the statutory criteria, the FMLA grants eligible employees 12 weeks of leave to deal with a specified family situation or medical condition.  29 U.S.C. § 2612.

Furthermore, the ADA does not protect an employee unable to perform "the essential functions of the employment position that such individual holds."  In contrast, the FMLA was designed to protect the employee  who is "unable to perform the functions of the position of the employee" from losing her position during the leave period.  See 29 C.F.R. § 825.115.  Essentially, the leave time under the FMLA structure is an opportunity for the employee to treat or attend to the condition rendering her unable to perform her job.  Hence, the determination that Spangler was not qualified at the time to perform the essential functions of her position with the Bank under the ADA will not automatically bar her claim under the FMLA.

Upon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of benefits, with some limited exceptions. 29 U.S.C. § 2614. If, however, after the leave time ends, "the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." Reynolds v. Phillips & Temro Indus., Inc., 195 F.3d 411, 414 (8th Cir. 1999) (quoting 29 C.F.R. § 825.214(b)). If Spangler had a serious health condition which made her unable to perform her job and if she made a valid request for FMLA leave, upon the expiration of her leave, the Bank would be under no obligation to reinstate her if she remained unable to perform the essential functions of her position.

The district court found Spangler "created a material issue of fact as to whether she suffered from a serious health condition under the meaning of the FMLA." We agree. The district court granted summary judgment for the Bank on Spangler's FMLA claim because it found no material factual dispute as to the insufficiency of Spangler's notice to the Bank of her need for FMLA qualifying leave. Because there was sufficient evidence in the record for a reasonable jury to find for Spangler on the FMLA notice issue, we reverse. See Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1028 (8th Cir. 2001) (standard of review).

An employee is to provide his or her employer with 30 days notice or as much notice as is practicable of the intention to use FMLA leave, when the necessity for leave "is foreseeable." 29 U.S.C. § 2612(e)(2). Less than 30 days notice is permissible for reasons "such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency." 29 C.F.R. § 825.302(a). Notice is required "as soon as practicable," meaning "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). "This ordinarily

. . . mean[s] at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." Id. If the need for FMLA leave is not foreseeable, the employee "should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

Although "[a]n employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave," "failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." 29 C.F.R. § 825.302(d). The acceptable ways for an employee to provide notice include, "in person, by telephone, telegraph, facsimile, . . . or other electronic means." 29 C.F.R. § 825.303(b).

Appellant argues that by alerting the Bank of her need for time off due to "depression again" the day before her dismissal, she put the Bank on notice that she would need time off that would qualify under the FMLA. Spangler presented a great deal of evidence of the Bank's awareness of her mental condition. She informed several supervisors of her illness throughout the time she was employed with the Bank. Furthermore, it is undisputed that in her final request for time off work, she stated it was because of "depression again." We have held that "[a]n employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work." Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000). "Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." Id. (citing Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir. 1999)).

In construing the facts in the light most favorable to Spangler, we view her uncontroverted statement that it was "depression again" as a potentially valid request for FMLA leave. The Seventh Circuit in Collins v. NTN-Bower Corp., 272 F.3d 1006 (7th Cir. 2001), affirmed a summary judgment for the employer when an employee suffering depression called and advised her employer only that she was "sick." The court concluded the notice was inadequate as a matter of law because "sick" did not imply "a serious health condition" as required by 29 U.S.C. § 2612(a)(1)(D). Id. at 1008. In Collins, the court did recognize depression may meet the FMLA description and clinical depression certainly meets the "serious health condition" requirement. Id. Unlike Collins, the Bank here knew Spangler suffered from depression, knew she needed leave in the past for depression and knew from Spangler specifically on September 16, 1998, she was suffering from "depression again."

The Bank may have a strong argument that Spangler's notice was untimely, or was unclear and otherwise inappropriate, or was even in violation of the Bank's reasonable notice policies. However, we cannot say, as a matter of law, viewing the evidence in the light most favorable to Spangler, no genuine issue of material fact with regard to appropriate notice exists. The Bank had ample knowledge over many years of Spangler's health problems and specifically her depression. She had required and taken medical leave in the past. On this occasion, there is evidence Spangler advised the Bank she needed time off for "depression again." A jury could consider the difficulty one suffering from depression has with communications, together with the Bank's general knowledge of Spangler's depression, in objectively evaluating whether the Bank was on notice of her need for FMLA leave.

When an employee provides the employer with notice that she may be in need of FMLA leave before the fact of the absence, it then becomes the employer's duty to determine whether or not the employee actually requires FMLA leave if there is

some doubt as to whether or not the request would qualify. Thorson, 205 F.3d at 381; Browning, 178 F.3d at 1049. Once the employer is notified, it has a duty either to provide FMLA time or follow the procedures set forth in the statute and regulations to verify the validity of the employee's request for time off "by a certification issued by the health care provider." 29 U.S.C. § 2613(a); Thorson, 205 F.3d at 381. "The responsibility to request FMLA certification is the employer's." Thorson, 205 F.3d at 381-82.

If the Bank were on notice of Spangler's intent to exercise her FMLA rights, a jury could decide the Bank violated the provisions of the FMLA by summarily dismissing Spangler instead of either providing her with FMLA leave or following the FMLA's certification procedure to determine the validity of the request for leave. On the other hand, the jury is free to decide the Bank dismissed Spangler from her job for another reason and the Bank therefore did not violate the FMLA. In Bailey v. Amsted Industries, Inc., 172 F.3d 1041, 1045-46 (8th Cir. 1999), we noted that an employee "cannot claim protection from the FMLA for disciplinary action . . . as a result of absences that are not attributable to his serious health conditions." The Bank is free to present evidence before the jury of its legitimate disciplinary reasons for dismissing Spangler, reasons not attributable to any FMLA request.

Finally, we emphasize, as the Seventh Circuit did in Collins, the FMLA does not provide an employee suffering from depression with a right to "unscheduled and unpredictable, but cumulatively substantial, absences" or a right to "take unscheduled leave at a moment's notice for the rest of her career." Collins, 272 F.3d at 1007. On the contrary, such a situation "implies that she is not qualified for a position where reliable attendance is a bona fide requirement . . . ." Id.

-10-

## III.  CONCLUSION

The decision of the district court is therefore affirmed in part and reversed in part.  This case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.