# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1082

_____

| | | |
|---|---|---|
| Jamila Phillips, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Cathie Mathews, individually, and in | * | |
| her official capacity as Director of | * | |
| Department of Arkansas Heritage; | * | |
| Sharon Hacker, individually, and in | * | |
| her official capacity as an employee | * | |
| of the State of Arkansas; and Mike | * | |
| Beebe, in his official capacity as | * | |
| Governor of the State of Arkansas, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: September 22, 2008
Filed: November 18, 2008

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Jamila Phillips appeals the district court's[1] grant of summary judgment for Defendants-Appellees on her interference and retaliation claims brought under the Family and Medical Leave Act (FMLA). We affirm.

I

Phillips began employment for the State of Arkansas on October 14, 2004. On Monday, April 17, 2006, Phillips transferred to the Department of Arkansas Heritage (DAH). Her main job responsibilities included answering the telephone and greeting visitors as they entered DAH headquarters. Sharon Hacker was Phillips's supervisor. As a new DAH employee, Phillips was hired subject to a six-month probationary period, during which her employment could be terminated at any time based on her overall performance. During her first week at DAH, Phillips was reprimanded twice: once for making too many personal telephone calls and once for failing to be cordial to DAH guests and employees.

During Phillips's orientation, the subject of her available balance of paid leave time was discussed. When employees of the State of Arkansas move to a different agency, they are allowed to transfer accrued leave time. Because DAH had not received the Proof of Prior Service from her previous agency, which verifies the amount of leave time available to an employee, Phillips was asked whether she had any leave time remaining. Phillips responded that she used quite a bit of leave time prior to her transfer, and she did not know how much leave time she had left, if any.

On Tuesday, April 18, Phillips was involved in an automobile accident on her way to work. She called DAH and told Hacker of the accident. After police left the scene of the accident, Phillips went to the emergency room, where she declined a doctor's excuse to take a few days off from work. Phillips arrived at DAH around

---

[1]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

midday. Because DAH had not received a Proof of Prior Service detailing the balance of her leave time, Phillips and DAH categorized her absence as leave without pay.

Phillips performed her job responsibilities without complaint for the remainder of the week, with the exception of agreeing with a colleague not to stuff posters into a tube because her back was hurting. Sometime on or after Thursday, April 20, Phillips scheduled a doctor's appointment with her primary care physician for Monday, April 24, at 10:45 A.M. Phillips discussed the appointment with Hacker. They agreed that until DAH received information concerning the balance of her leave time, they would continue to operate under the assumption she did not have any leave time available. As such, they both agreed she should arrive to work at 8:00 A.M. prior to her doctor's appointment and take an early lunch, thereby using the least amount of leave without pay as possible.

During this discussion, Hacker mentioned that Phillips may need time off for physical therapy. Hacker printed and gave to Phillips FMLA paperwork to complete, and she suggested Phillips discuss the possibility of FMLA leave with Sue Montgomery or Debbie Ballard. Phillips did not complete the paperwork nor discuss a need for FMLA leave with either Montgomery or Ballard prior to her doctor's appointment.

On Monday, April 24, Phillips's car would not start. She called DAH and informed another employee that her uncle was on his way to fix the car. Phillips said she would call back when she had more information; there is a factual dispute whether Phillips did in fact call back. Phillips did not report to DAH prior to her doctor's appointment. During the appointment, her doctor prescribed several sessions of physical therapy and recommended she take off work through Thursday, April 27. Phillips had the doctor complete the necessary FMLA paperwork, and she brought the completed paperwork with her to DAH after her appointment. Phillips was unable to submit her FMLA paperwork or inform DAH of her need for time off, however,

because she was given a letter of termination immediately upon her arrival. The letter stated Phillips was terminated because she did not report to work until after her doctor's appointment, and "[l]eave without pay is a very serious issue and is not to be used because an automobile won't start."

Phillips's last check stub, received after her termination, indicated she had paid leave time available. On May 5, 2006, DAH received the Proof of Prior Service from her previous agency, which indicated she had no leave time remaining. There is no reason given for the discrepancy between her check stub and the Proof of Prior Service.

Phillips filed suit in the Eastern District of Arkansas against Hacker, Cathie Mathews, Director of DAH, and Mike Beebe, Governor of the State of Arkansas. Phillips sued Hacker and Mathews in their individual and official capacities and Governor Beebe in his official capacity. She alleged interference and retaliation in violation of the FMLA. Appellees moved for summary judgment, arguing they lacked notice concerning Phillips's need for FMLA leave, they terminated her for reasons independent from the FMLA, she did not have a "serious health condition" within the meaning of the FMLA, and they were immune from suit in their official capacities. The district court granted summary judgment in Appellees' favor on both claims. The court concluded the interference claim failed because DAH did not have notice of Phillips's need for FMLA leave, and, alternatively, her termination was not related to any FMLA rights. The district court concluded the retaliation claim failed because she never exercised her FMLA rights, and, alternatively, she was not terminated because of those rights.[2] Phillips, arguing the district court erred in granting summary judgment on both of her claims, now appeals.

---

[2]The district court found it unnecessary to consider whether Phillips had a "serious health condition" or whether Appellees were immune from suit in their official capacities. Appellees do not renew these arguments on appeal. Because we affirm the district court, we find it unnecessary to consider these issues as well.

II

This court reviews the district court's grant of summary judgment de novo. Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 850 (8th Cir. 2002). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id.

The FMLA entitles an employee to twelve workweeks of leave during any twelve-month period if he or she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is any "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

There are two types of claims under the FMLA: "(1) 'interference' or '(a)(1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." Stallings v. Hussman Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)-(2)).

A

In order to state a claim for interference under the FMLA, Phillips must have given notice of her need for FMLA leave. When leave is needed for an unforeseeable event, notice is required "as soon as practicable." 29 C.F.R. § 825.302(a). "This ordinarily means at least verbal notification to the employer within one or two

business days of when the need for leave becomes known to the employee." Spangler, 278 F.3d at 852 (quoting 29 C.F.R. § 825.302(b) (alterations omitted). However, "[a]n employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work." Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000). The employer's duties arise "when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." Id. (quoting Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir. 1999)). Whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury. Browning, 178 F.3d at 1049.

The district court erred in concluding as a matter of law that Phillips failed to provide enough information to put her employer on notice she may be in need of FMLA leave. Viewing the evidence in the light most favorable to Phillips, a reasonable jury could conclude Phillips satisfied the notice requirement because she put Appellees on notice that her doctor visit was related to her prior accident and could result in a need for additional treatment and time off from work.

Appellees argue they did not have notice of the need for FMLA leave because Phillips never indicated a need to be absent from work subsequent to the doctor's appointment or an inability to perform her job responsibilities, and they terminated her before she turned in her FMLA paperwork. A reasonable jury could conclude otherwise, however, because Phillips and Hacker specifically discussed the possibility that Phillips could need time off for physical therapy subsequent to her doctor's appointment, and Hacker even printed FMLA paperwork for Phillips to complete. Even though Phillips did not indicate a significant inability to perform her job responsibilities in the days following the accident, Hacker knew she was going to a doctor's appointment and expressly recognized that the result of the appointment could necessitate FMLA leave. Thus, even though neither party knew before the

-6-

appointment that Phillips *definitely* would need additional time off, both were aware of the *possibility* that such time could be needed.

Appellees attempt to make much of the fact that Phillips did not discuss a need to be absent beyond her doctor's appointment and did not submit FMLA paperwork prior to her termination. This argument is insufficient for several reasons. First, the required FMLA paperwork includes a medical certification, which Phillips would have been unable to submit until after her doctor's appointment. Second, FMLA leave "include[s] visits to a doctor when the employee has symptoms that are eventually diagnosed as constituting a serious health condition, even if, at the time of the initial medical appointments, the illness has not yet been diagnosed nor its degree of seriousness determined." Caldwell v. Holland of Tex., Inc., 208 F.3d 671, 676 (8th Cir. 2000) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 163 (1st Cir. 1998). Thus, if Phillips had a serious health condition, her doctor's appointment to diagnose and treat that condition was covered by the FMLA. Because Appellees knew that Phillips was attending a doctor's appointment for treatment related to her accident and that could result in a need for physical therapy, i.e. develop into a serious health condition, Phillips gave notice that she may be in need of FMLA leave, including for the doctor's appointment itself.

Moreover, it is immaterial that Phillips was terminated before she submitted her FMLA paperwork or before Appellees learned she needed additional time off from work. That is because an "employer does not avoid liability by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA." Caldwell, 208 F.3d at 677. Because Appellees had notice that Phillips's doctor's appointment could potentially be covered by the FMLA, they do not escape liability by simply terminating her before she could inform them of the results of her appointment; they bore "the risk that the health condition in question later develop[ed] into a serious health condition . . . ." Id.

Contrary to Appellees' assertion, this does not mean that every routine visit to a doctor constitutes notice to an employer of a potential serious health condition, which in turn prohibits an employer from taking action against an employee in close temporal proximity to that visit. In this case, however, Hacker knew Phillips's appointment was a non-routine visit related to her accident, expressly recognized that the result of the appointment could necessitate additional time off covered by the FMLA, and even went so far as to print FMLA paperwork for Phillips to complete. In light of this evidence, a reasonable jury could conclude Phillips satisfied the FMLA's notice requirement.

Even though the district court erred on the issue of notice, reversal is not appropriate because the interference claim nonetheless fails. Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." Stallings, 447 F.3d at 1050 (quoting 29 C.F.R. § 825.225(b)). "An employer's action that deters an employee from participating in protected activities constitutes 'interference' or 'restraint' of the employee's exercise of his rights." Id. For her claim, Phillips must show only that she was entitled to the benefit denied. Id. The Appellees' intent in denying that benefit is immaterial. Id. Phillips "can prevail under an interference theory if [s]he was denied substantive rights under the FMLA for a reason connected with h[er] FMLA leave." Id.

Assuming Phillips had a serious medical condition, which we do not decide on appeal, she was entitled to FMLA leave starting from her doctor's appointment at 10:45 A.M. on Monday, April 25, through her necessary time off from work. Because Phillips was terminated during her FMLA leave, Appellees interfered with her FMLA rights since "every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights." Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 980 (8th Cir. 2005). The employer is not liable for this interference, however, "where an employee's reason for dismissal is insufficiently

related to FMLA leave . . . ." Stallings, 447 F.3d at 1051. The burden is on the employer to prove the reason for termination was unrelated to FMLA. Throneberry, 403 F.3d at 978-79.

Phillips's interference claim fails because, viewing the evidence in her favor, there is no genuine issue of fact that she was terminated for a reason connected to her FMLA leave. Rather, she was terminated because she did not show up to work as agreed prior to her doctor's appointment (a time period not covered by the FMLA) and did not have any leave time available to apply towards that absence. The district court correctly concluded that Phillips's car being unable to start is not a serious health condition, and her termination for that reason was completely unrelated to her doctor's appointment or any other need for FMLA leave. Additionally, Appellees have further elaborated on their decision to terminate Phillips by noting her two prior reprimands during her first week of employment.

Phillips offers no evidence other than speculation to support a connection between her termination and FMLA leave. Her primary argument is that she did have leave time built up, noting the check stub she received after her termination. Even though there is a factual dispute whether Phillips had leave time available, it is not material because all parties were operating under the assumption that no leave time was available until DAH received proof otherwise. At best, Appellees were mistaken in their belief Phillips did not have leave time available. However, termination based on even a mistaken, but honestly held, belief concerning leave time is still termination based on a reason unrelated to the FMLA. Thus, Appellees have met their burden of showing Phillips "would have been dismissed regardless of [her] request for, or taking of, FMLA leave." Throneberry, 403 F.3d at 979 (quoting Smith v. Diffee Ford-Lincoln-Mercury, Inc., 403 F.3d 955, 963 (8th Cir. 2002)). Whether Phillips had a doctor's appointment or not, she would have been terminated for not showing up to work at 8:00 A.M. Monday, April 24, when Appellees believed – rightly or wrongly – her absence would be taken as leave without pay because she did not have paid leave

time available. Because no reasonable jury could conclude Phillips's termination was related to her FMLA leave, summary judgment for Appellees was proper on her interference claim.

B

For many of the same reasons, the district court properly granted summary judgment for Appellees on the retaliation claim. Although the district court erred in concluding Phillips did not exercise any rights under the FMLA, it correctly determined she was not terminated because she exercised those rights.

Because Phillips does not have direct evidence of retaliation, we analyze her FMLA retaliation claim under the <u>McDonnell Douglas</u> burden-shifting framework.[3] Phillips must first establish a prima facie case, which requires her to "show that she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." <u>Smith v. Allen Health Sys., Inc.</u>, 302 F.3d 827, 832 (8th Cir. 2002). If Phillips is able to do so, the burden shifts to Appellees to come forward with evidence of a legitimate, nondiscriminatory reason for the adverse action. <u>Id.</u> at 833. Their burden "is not onerous and the showing need not be made by a preponderance of the evidence." <u>Wallace v. Sparks Health Sys.</u>, 415 F.3d 853, 860 (8th Cir. 2005). If Appellees do so, Phillips must come forward with evidence that creates an issue of fact as to whether the asserted reason was pretext for discrimination. <u>Smith</u>, 302 F.3d at 833.

The district court determined the retaliation claim failed because she never exercised her rights under the FMLA, concluding her employment was terminated before she could. This conclusion was incorrect because, as we have already

---

[3]<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-06 (1973).

-10-

explained, the doctor's appointment was covered by the FMLA if it involved diagnosing and treating a condition later found to be a "serious health condition." Even if Phillips establishes a prima facie case of retaliation, however, Appellees have put forward a legitimate nondiscriminatory reason for her termination: her failure to show up for work as agreed prior to her doctor's appointment and without an available balance of paid leave time to apply towards that absence.[4]

Phillips does not create an issue of fact that this reason is pretext for discrimination. "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence than it takes to make a prima facie case, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." Smith, 302 F.3d at 834 (quoting Sprenger, 253 F.3d at 1111) (alteration omitted). There are several recognized methods of proving pretext:

> An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated

---

[4]We do not determine whether Phillips has established a prima facie of retaliation. Unquestionably, termination is an adverse employment action. Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144, 1148 (8th Cir. 2008). Phillips's only significant evidence to establish a causal connection between the exercise of her FMLA rights and her termination is the close temporal proximity between it and her doctor's appointment. In Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002), we thoroughly discussed the various lines of precedent determining whether, and when, temporal proximity alone is sufficient to satisfy the causal connection element of a prima facie retaliation case. We decline to consider this difficult issue, however, because Appellees have put forward a legitimate reason for Phillips's termination, and her evidence that this reason was a pretext for retaliation is weak.

more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

Stallings, 447 F.3d at 1052.

Phillips first argues Appellees' stated reason for her termination has no basis in fact because she did in fact have leave time available. As previously discussed, however, the operative issue is that Appellees were not aware prior to her termination that she may have had leave time available, and it is undisputed all parties were operating under the assumption no leave time was available until DAH learned otherwise. Thus, Phillips's introduction of a check stub issued after her termination showing a balance of leave time does not create an issue of fact that Appellees' reason for her discharge lacked a basis in fact at the time of her discharge.

Second, Phillips argues Appellees are changing their explanation for her termination by now relying on her two prior reprimands and her probationary status as a justification for her discharge. This does not prove pretext, however, because Appellees are not changing their initial justification, merely adding to it. Appellees "certainly did not back off their original explanation, but only pointed out an additional aspect of the same behavior." Smith, 302 F.3d at 835. Thus, it "is not a substantial change in [their] story, and it is not probative of pretext." Id.[5]

Therefore, there is no issue of fact that Appellees' non-discriminatory reason for her termination was pretext for FMLA retaliation. As such, Phillips's retaliation claims fails, and summary judgment for Appellees was proper.

---

[5]Phillips also criticizes Hacker's statement in her deposition that Phillips failed to call in a second time on the morning of her doctor's appointment as promised. While there is an issue of fact whether she did in fact call back, this does not demonstrate pretext since this was merely a supplemental after-the-fact justification given in the course of litigation that does not undermine Appellees' legitimate, non-pretextual reason for terminating her regardless of whether she called back or not.

-12-

III

Accordingly, we affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring.

The opinion of the court accurately sets forth the framework adopted by this circuit for analyzing claims under the Family and Medical Leave Act (FMLA), and I agree that the district court's judgment should be affirmed under that approach. I therefore concur in the opinion of the court. The analytical framework used by our circuit, however, deviates from the text of 29 U.S.C. § 2615(a), and it would be preferable to bring our analysis in line with the statutory language.

Our cases say that there are two types of claims under the FMLA: "(1) 'interference' or '(a)(1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." *Ante*, at 5 (quoting *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)-(2)); *see also Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). By its terms, however, subsection (a)(2) does not apply to claims in which an employee "alleges that the employer discriminated against him for exercising his FMLA rights." Rather, that subsection makes it unlawful for an employer to discharge or otherwise discriminate against any individual "*for opposing any practice made unlawful* by [the FMLA]." 29 U.S.C. § 2615(a)(2) (emphasis added). This prohibition is analogous to the sort of "retaliation" claim that is familiar under Title VII, *see* 42 U.S.C. § 2000e-3(a), where an employee alleges that the employer discriminated against the employee for opposing what the employee reasonably believed to be violations of Title VII by the employer. *E.g.*, *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008); *see* 29 C.F.R. § 825.220(e); 60 Fed. Reg. 2180, 2218 (Jan. 6, 1995) ("[The FMLA] makes

it unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the Act. This opposition clause is derived from Title VII of the Civil Rights Act of 1964 and is intended, according to the legislative history, to be construed in the same manner."). Some courts properly have applied § 2615(a)(2) in this manner. *E.g.*, *Gruppo v. FedEx Freight Sys., Inc.*, No. 08-1006, 2008 WL 4596332 (10th Cir. Oct. 15, 2008); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301-02 (4th Cir. 1998).

Jamila Phillips asserts that her employer discharged her because she exercised her rights under the FMLA. This claim does not arise from any alleged opposition to a practice made unlawful by the FMLA, and it therefore should not be governed by § 2615(a)(2). The Department of Labor, however, has determined that the FMLA prohibits an employer from discriminating against employees or prospective employees who have used FMLA leave. 29 C.F.R. § 825.220(c). Several courts have thought this regulation is a reasonable interpretation of § 2615(a)(1), which makes it unlawful for an employer "to interfere with, restrain, or deny" the exercise of any right under the FMLA. *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir. 2004); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122-24 (9th Cir. 2001); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 n.4 (1st Cir. 1998); *see also Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004) (per curiam) (discussing two approaches under § 2615(a)(1) for analyzing employees' claims that they were punished for exercising their rights under the FMLA).

The termination of an employee for exercising rights under the FMLA could be viewed as actionable under § 2615(a)(1) as a denial of the employee's right under 29 U.S.C. § 2614(a) to be restored to an equivalent position upon return from FMLA leave. *Cf. Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 401 (6th Cir. 2008). Or, because "attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights," *Bachelder*, 259 F.3d at 1124, at least in the case of an employee who retains employment and suffers

negative consequences, there seems to be a textual basis for finding "interfere[nce] with" or "restrain[t]" on the future exercise of FMLA rights. As a textual matter, the application of this "chill" theory is more difficult in the case of an employee who is terminated, but if a retained employee can proceed on this basis under § 2615(a)(1), then it would be odd to conclude that a terminated employee is entitled to lesser protection simply because the employer took the more drastic step of denying him or her the opportunity to exercise future FMLA rights altogether. In any event, the appellees do not dispute that this type of claim is available under the FMLA, and treating the claim under § 2615(a)(1) is more appropriate than invoking the opposition clause of § 2615(a)(2).

When the entirety of Phillips's case is analyzed under 29 U.S.C. § 2615(a)(1), the judgment of the district court should be affirmed. Our analysis in Part II.A concludes that even without regard to the employer's intent, *ante*, at 8, and with the burden of proof shifted to the employer, *ante*, at 9, the appellees are entitled to summary judgment on a claim of interference under § 2615(a)(1), because the undisputed facts demonstrate that Phillips was discharged for reasons unrelated to the FMLA. This analysis also dictates a rejection of Phillips's claim, discussed in Part II.B, that the appellees terminated her *because* she exercised her rights under the FMLA. Therefore, with these additional views, I concur in the opinion and judgment of the court.

_____