# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-2076

———————

Donna Lovland,

    Plaintiff - Appellant,

v.

Employers Mutual Casualty Company,

    Defendant - Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Southern District of Iowa.
\*
\*
\*

———————

Submitted: December 15, 2011
Filed: March 16, 2012

———————

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

———————

LOKEN, Circuit Judge.

Donna Lovland claims that her termination by Employers Mutual Casualty Company ("EMC") because of excessive work absences unlawfully interfered with her rights under the Family and Medical Leave Act ("FMLA"), violating 29 U.S.C. §§ 2615(a)(1) and (a)(2). Some months before the termination, Lovland was issued an attendance-related corrective action notice. The notice referenced eighteen hours that were FMLA-protected, and the corrective action was admittedly a factor in the May 2009 termination decision. Therefore, Lovland argues on appeal, the district

court[1] erred in granting summary judgment dismissing these claims because a reasonable jury could conclude this protected leave was a "negative factor" in her termination. Reviewing the grant of summary judgment *de novo*, we affirm. <u>Scobey v. Nucor Steel-Ark.</u>, 580 F.3d 781, 785 (8th Cir. 2009) (standard of review).

**I.**

In mid-January 2009, Lovland's supervisor, Jean Bloomburg, president of EMC's Risk Services division, used EMC's new payroll record system to review the 2008 attendance of all Risk Services employees. The review suggested to Bloomburg that claims supervisor Lovland had an unacceptable number of absences. Bloomburg had recruited Lovland, considered her a good claims supervisor, and recalled that she injured her back in 2008. Bloomburg also knew that the FMLA entitles an employee to twelve weeks of paid or unpaid leave during any twelve-month period if she cannot perform her work functions because of a serious health condition. <u>See</u> 29 U.S.C. § 2612(a)(1)(D). So before taking action, Bloomburg asked Lovland if she would like to request retroactive designation of any FMLA leave days in the prior year. In response, Bloomburg received (i) an email from Roxanne Hillesland, an EMC benefits specialist, advising that Lovland had submitted medical certifications citing a need for intermittent FMLA leave starting in March 2008, and (ii) an email from Lovland requesting retroactive designation of FMLA leave for:

> Week ending 02/22/08
> Week ending 05/16/08
> Week ending 06/17 & 06/18
> Week ending 08/15
> Week ending 11/25/08
> January 22, 2009

---

[1] The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

Bloomburg met with Lisa Scaglione, an EMC employee relations consultant, to manually create a revised attendance record for the year covered by Bloomburg's review, using Lovland's email to retroactively designate FMLA leave. Scaglione modified a print-out of Lovland's daily "Exception History" by marking with an "F" those days of scheduled and unscheduled "PTO" (paid-time-off) and "LWOP" (leave without pay) for which Lovland had requested retroactive leave. This left as non-FMLA-protected leave 39.5 hours of scheduled PTO Used, 103.75 hours of unscheduled PTO Used, and 8 hours of LWOP. For summary judgment purposes, the parties agree that Scaglione erroneously failed to mark with an "F" 15.5 unscheduled PTO hours and 2.5 LWOP hours, a total of eighteen hours that should have been retroactively FMLA-protected if Lovland's email is interpreted as requesting as many FMLA leave days as possible.[2]

Bloomburg considered Lovland's revised work absences unacceptably high, particularly the hours of unscheduled PTO and LWOP.[3] When a review of Lovland's attendance records for 2006 and 2007 showed similar excessive unscheduled PTO

---

[2]The inconsistent use of "week ending" in Lovland's email created some ambiguity regarding the days requested. Scaglione did not include May 15 and August 11 (7.75 hours each), days within work weeks ending May 16 and August 15. But Lovland had prefaced her request for June 17 and 18, a Tuesday and Wednesday, with "week ending." Bloomburg concluded that, when Lovland wanted two FMLA retroactive dates in a single week, she specified both dates in her email despite stating "week ending." The other 2.5 hours arose because January 22, 2009 was recorded as 5.5 hours of unscheduled PTO and 2.5 hours of LWOP. Scaglione marked the 5.5 unscheduled PTO hours with an "F" but overlooked the 2.5 hours of LWOP.

[3]EMC employees accrue paid time off as they work. Unscheduled PTO is used when an employee fails to give 24 hours' advance notice. As unscheduled PTO is more disruptive to EMC's operations, using more hours of unscheduled than scheduled PTO is discouraged and may result in attendance issues. LWOP absences occur when the employee has exhausted her PTO, so they are authorized only for unpaid FMLA leave situations and emergencies.

usage, Bloomburg consulted with EMC's head of human resources, Kristi Johnson, to determine whether corrective action was warranted. Johnson testified she was particularly concerned that FMLA leave be excluded from consideration, so she compared Lovland's email with the revised attendance record, subtracting the eighteen hours before agreeing with Bloomburg that the amount of non-FMLA-protected unscheduled PTO and LWOP warranted a corrective action notice. The manually-revised attendance record was not changed to add an "F" to the three days in question. However, the deposition testimony of Bloomburg and Johnson contains no hint that either would *not* have issued the corrective action notice if eighteen hours had been deducted in their calculations of Lovland's non-FMLA-protected absences. It is undisputed both supervisors intended to exclude all FMLA-protected leave.

On February 23, Bloomburg met with Lovland and delivered a corrective action notice. Consistent with the revised attendance record, the notice stated that, during the year in question, "you used a total of 103.75 hours (13.38 days) of unscheduled PTO" and "a total of 8.00 hours of LWOP." It also stated, "This corrective action notice does not include any days that you reported as FMLA." The remedial section of the notice provided:

> It is very important that you meet or exceed the following on-going expectations:
>
> • Unscheduled PTO must be kept to an absolute minimum.
> • You must schedule PTO 24 hours in advance.
> • LWOP will not be tolerated with the exception of FMLA-related absence or an extreme emergency and/or illness. . . .
> • You must carry a reserve of PTO in your bank at all times.
> • You must communicate whether an unscheduled day is related to FMLA.

Lovland did not dispute the contents of the notice and understood that further non-FMLA absences could result in termination of her employment.

-4-

Lovland's attendance improved following the corrective action notice. In March 2009, she received an "exceeds expectations" performance review for 2008 which noted attendance as a concern that Lovland "has corrected . . . herself." In April, Bloomburg approved new FMLA leave so that Lovland could care for her terminally ill father and later granted Lovland five "manager-approved" days of paid FMLA leave when this time off depleted Lovland's PTO bank.

On May 12, Lovland became upset after receiving her father's death certificate in the mail. The following morning, while Bloomburg was traveling, Lovland left Bloomburg a voicemail message saying she would be late for work. Later that day and again the next day, Lovland called Cindi Cupp, a claims supervisor on Lovland's managerial level, and said she would not be in that day. Lovland did not leave a message advising Bloomburg she would not work either day or ask Cupp to notify Bloomburg. EMC's employee handbook provided that employees must notify their supervisor of absences immediately after the office opens and that two days no-call-no-show is considered a voluntary resignation. Bloomburg returned to the office and learned that Lovland was a no-call-no-show on May 13 and 14, days that were not FMLA-protected. Bloomburg reviewed the situation with Johnson, who gave permission to terminate Lovland because she had violated the February corrective action notice as well as corporate policy when she missed two consecutive days of work without notifying her direct supervisor. On May 22, Bloomburg told Lovland she was terminated for "absenteeism." This lawsuit followed.

## II.

In the district court, the key summary judgment issue was an alleged fact dispute of obvious significance -- whether Bloomburg reviewed the 2008 attendance records of all Risk Services employees before or after Lovland requested retroactive designation of additional FMLA leave days that year. The district court's thorough memorandum Order granting summary judgment carefully reviewed the documents

and testimony related to this issue and concluded, "A reasonable jury would not find, based on the evidence cited by Lovland, that Bloomburg's attendance review began after Lovland's request for retroactive FMLA leave." In the last two pages of Lovland's fifty-page appeal brief, she argues that a reasonable jury could find to the contrary. After careful review of the summary judgment record, we agree with the district court's conclusion that this is not a genuine issue of disputed fact. See Fed. R. Civ. P. 56(a), (c)(1).

On appeal, Lovland primarily argues that the district court erred by adhering to a dominant theme in Eighth Circuit FMLA precedents. In two subsections, 29 U.S.C. § 2615(a)(1)-(2), the FMLA defines Prohibited Acts to include "Interference with rights":

> (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

> (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

These provisions do not explicitly prohibit retaliation against an employee for exercising FMLA rights. But this court, like our sister circuits, has consistently held that the statute prohibits retaliation against an employee who exercises her FMLA rights.[4] See, e.g., Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) ("Basing an adverse employment action on an employee's use of leave . . . is therefore

---

[4]The Department of Labor's FMLA regulations supported this interpretation of § 2615(a): "An employer is prohibited from discriminating against employees . . . who have used FMLA leave. For example . . . . employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . ." 29 C.F.R. § 825.220(c) (1998).

actionable."). However, our cases have classified claims of retaliation for the exercise of FMLA rights as arising under the "discrimination" prohibition of § 2615(a)(2); we have limited "interference" claims under § 2615(a)(1) to situations where the employee proves that the employer denied a benefit to which she was entitled under the FMLA, which include terminating an employee while on FMLA leave. See Wisbey v. City of Lincoln, Neb., 612 F.3d 667, 675 (8th Cir. 2010), citing Stallings v. Hussmann Corp., 447 F.3d 1041, 1050-51 (8th Cir. 2006). Applying this limitation, when the employee asserts a § 2615(a)(1) claim that a right prescribed by the FMLA has been denied, we have held that the employer's intent in denying the benefit is immaterial; by contrast, a retaliation claim under § 2615(a)(2) requires proof of an impermissible discriminatory animus, typically with evidence analyzed under the McDonnell Douglas[5] burden-shifting framework at the summary judgment stage. See Stallings, 447 F.3d at 1050-51.

In this case, the district court concluded, consistent with Stallings, that Lovland asserted only § 2615(a)(2) retaliation claims because she alleged "discrimination that occurred after she took FMLA leave, not denial of, or interference with, her leave."[6] Lovland argues this was an erroneous interpretation of § 2615(a), relying on three authorities. First, some other circuits (but not all) have held that § 2615(a)(1) includes interference claims based on proof that *use* of FMLA-protected leave was a "negative factor" in a later adverse employment decision. See, e.g., Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124-26 (9th Cir. 2001). Second, a concurring opinion in one of our decisions asserted that treating this type of claim "under

---

[5]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-06 (1973).

[6]Lovland admitted that EMC never denied a FMLA request, discouraged her from taking FMLA leave, or failed to reinstate her following FMLA leave. Indeed, EMC retroactively designated intermittent FMLA leave, see 29 C.F.R. § 825.301(d) (retroactive designation allowed only if employer and employee "mutually agree"); authorized additional FMLA leave in 2009; and granted extra paid leave when the 2009 leave exhausted Lovland's PTO bank.

§ 2615(a)(1) is more appropriate than invoking the opposition clause of § 2615(a)(2)." Phillips v. Mathews, 547 F.3d 905, 915 (8th Cir. 2008) (Colloton, J., concurring). Some later opinions have expressed support for this view, without abandoning the Stallings dichotomy. See Quinn v. St. Louis Cnty., 653 F.3d 745, 754 n.7 (8th Cir. 2011); Scobey, 580 F.3d at 790 n.9. Third, in January 2009, the Department of Labor amended the first sentence of 29 C.F.R. § 825.220(c) to state, "The Act's prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights," describing this as a "clarification [that] will have no impact on employers or workers." 73 Fed. Reg. 67934, 68055 (Nov. 17, 2008).

Combining this interpretation of cognizable interference claims with prior Eighth Circuit cases declaring that an employer's intent is irrelevant to § 2615(a)(1) claims, Lovland argues that EMC's admission the corrective action notice was "a negative factor" in her termination, and its "reliance" on eighteen hours of FMLA-protected leave in the corrective action notice, conclusively establish interference with her FMLA rights. As this "negative factor" theory is an interference claim, Lovland asserts that she need not present evidence demonstrating that EMC's proffered reasons for the May 2009 termination were pretextual.

Whatever the merits of Lovland's interpretation of § 2615(a)(1) as an original proposition, her argument ignores the fact that numerous recent Eighth Circuit decisions have adhered to the Stallings interference/retaliation dichotomy, including decisions after the promulgation of revised § 825.220(c) in January 2009. See Quinn, 653 F.3d at 753-54; Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011); Wisbey, 612 F.3d at 675; Bacon v. Hennepin Cnty. Med. Ctr., 550 F.3d 711, 714 n.3 (8th Cir. 2008); Phillips, 547 F.3d at 909. As a panel, we are bound by those decisions and therefore affirm the dismissal of Lovland's § 2615(a)(1) claim.

In addition, it is important to note that summary judgment was appropriate in this case even if a § 2615(a)(1) interference claim may be based upon proof that an employee's use of FMLA leave was a "negative factor" in a subsequent adverse employment action. Lovland carefully avoids the question whether EMC has any factual defense to her negative factor theory, which she presents as a form of strict liability because EMC's intent is irrelevant. This is clearly contrary to Eighth Circuit cases holding that § 2615(a)(1) is *not* a strict liability statute -- an employer is not liable for interference if its adverse decision was unrelated to the employee's use of FMLA leave. See Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 977-81 (8th Cir. 2005); accord Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010); Phillips, 547 F.3d at 915 (Colloton, J., concurring). The flaw in Lovland's theory lies in assuming the no-intent rule applies if the universe of interference claims is radically expanded. As the First Circuit has explained in a line of FMLA decisions, "We have distinguished the FMLA's prescriptive provisions, which set forth substantive entitlements and for which an employer's subjective intent is irrelevant, from its proscriptive ones, for which the employer's motivation is central, and we have noted that negative factor claims should be characterized as proscriptive." Mellen v. Trs. of Boston Univ., 504 F.3d 21, 26 (1st Cir. 2007) (citations omitted); accord Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147-48 (3d Cir. 2004); King v. Pfd. Technical Grp., 166 F.3d 887, 891 (7th Cir. 1999). Whether a proscriptive right is claimed under 29 U.S.C. § 2615(a)(1) or (a)(2) does not change the fact that the prohibited activity is, at bottom and by the explicit language of 29 C.F.R. § 825.220(c), a form of intentional discrimination.

Viewing Lovland's negative factor claim from this perspective, it fails for lack of proof of the requisite discriminatory intent. EMC conceded that its prior corrective action was a "negative factor" in Lovland's subsequent termination. But Lovland failed to show that taking eighteen hours of retroactively designated FMLA leave was a "negative factor" that caused or even influenced EMC's decision to take corrective action. In determining whether to take that action, EMC's decision-makers first

subtracted retroactively-designated FMLA hours from the calculation of Lovland's 2008 absences (note that the corrective action notice explicitly disclaimed consideration of FMLA leave). Though there was evidence Scaglione erroneously failed to exclude eighteen of these FMLA-protected hours, Johnson testified she corrected that mistake in making sure all FMLA leave was in fact excluded, and in any event the remaining 93.75 hours of non-FMLA-protected unscheduled PTO and LWOP absences dwarfed the eighteen hours on which Lovland's entire interference claim is based. On this record, no reasonable jury could find that Lovland's three-year pattern of excessive unscheduled PTO and LWOP would not have triggered the corrective action notice if Scaglione had marked the eighteen hours with three additional "Fs" on the revised attendance record. Because the corrective action was not influenced by FMLA leave, it was plainly a relevant *and legitimate* "negative factor" in determining that Lovland's "no-call-no-show" absences on May 13 and 14, 2009, warranted termination. Thus, as in Estrada, 616 F.3d at 871-72, the undisputed facts show that EMC would have made the same adverse decisions whether or not Lovland was afforded the retroactively designated FMLA leave.

## III.

Finally, we have little difficulty rejecting Lovland's alternative assertion that the district court erred in dismissing her § 2615(a)(2) retaliation claim. We will not consider the argument that including eighteen hours of retroactive FMLA leave in the corrective action notice is direct evidence of retaliation because it was not presented to the district court. Likewise, we put aside the contention that the corrective action, standing alone, was actionable retaliatory discipline because Lovland's complaint only asserted a wrongful termination claim and because the corrective action decision was based on Lovland's unacceptable attendance record, not on her use of FMLA leave. Thus, the issue is whether Lovland presented sufficient evidence that her termination was the product of FMLA retaliation to survive summary judgment under the McDonnell Douglas analysis. See Phillips, 547 F.3d at 912.

-10-

We will assume without deciding that Lovland presented a prima facie case establishing a causal connection between the May 2009 termination and her use of FMLA leave in 2008. As the district court concluded, EMC clearly came forward with evidence of legitimate, nondiscriminatory reasons for the May 2009 termination -- Lovland, an employee with a pattern of excessive work absences that had recently required corrective action, violated the company's published two-day no-call-no-show policy by not coming to work on May 13 and 14 without notifying direct supervisor Bloomburg of those absences. Thus, Lovland must present sufficient evidence that the asserted reasons were a pretext for FMLA discrimination or retaliation. We agree with the district court's analysis of this issue:

> Lovland argues that the discharge was retaliation for her taking FMLA leave because the corrective action notice cited FMLA hours and Bloomburg discharged her for violating the terms of the notice. As discussed above, Lovland's premise that the corrective action was issued as retaliation for taking FMLA leave is invalid. Lovland's [pretext] argument crumbles without this foundation to support it.

We likewise agree with the district court's rejection of Lovland's alternative pretext theories. First, Lovland argues that other Risk Services employees were not reprimanded for reporting absences to co-workers, rather than to their direct supervisors. But she identified no similarly situated employees -- that is, employees with prior attendance deficiencies -- who received more lenient treatment for violating the no-call-no-show policy. Second, Lovland argues that Bloomburg changed her initial rationale for terminating Lovland, absenteeism, to her violation of the no-call-no-show policy. But as in Phillips, 547 F.3d at 913, this is not evidence of pretext because EMC never changed its initial reason for the termination; it "merely add[ed] to it." Accord Wierman, 638 F.3d at 1001.

-11-

As Lovland failed to present evidence creating an issue of fact whether EMC's non-discriminatory reasons were a pretext for FMLA retaliation, the district court properly granted summary judgment on this claim. See Phillips, 547 F.3d at 912-13.

The judgment of the district court is affirmed.

_____