# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3923

_____

| | | |
|---|---|---|
| Elizabeth Rask, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Fresenius Medical Care | * | |
| North America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 27, 2007
Filed: December 6, 2007(Corrected: 12/13/07)

_____

Before COLLOTON, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Elizabeth Rask was dismissed from her job, she sued her former employer, Fresenius Medical Care North America, under the Americans with Disabilities Act (ADA), *see* 42 U.S.C. §§ 12101-12213, the Minnesota Human Rights Act (MHRA), *see* Minn. Stat. §§ 363A.01-363A.41, and the Family and Medical Leave Act (FMLA), see 29 U.S.C. §§ 2601-2654. The district court[1] granted summary judgment in favor of Fresenius, *Rask v. Fresenius Med. Care North*

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

*America*, No. 05-1267, 2006 WL 3060143 (D. Minn. Oct. 26, 2006), and Ms. Rask appealed.  We affirm.

Ms. Rask worked as a patient care technician at two of Fresenius's kidney dialysis clinics in Minnesota.  Following a series of disciplinary and attendance problems, Fresenius terminated her employment when she failed to come to work on 28 May 2004.  Ms. Rask had a long history of depression, and she filed an action claiming that her depression was a disability and that termination of her employment constituted discrimination under the ADA and the MHRA.  She also claimed that some of the days when she did not come to work were covered medical leave under the FMLA.

I.

The ADA prohibits employers from discriminating against a "qualified individual with a disability," 42 U.S.C. § 12112(a), whom it defines as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8).  To make out a *prima facie* case of employment discrimination under the ADA, a plaintiff must establish that she is disabled within its meaning, that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and that she suffered an adverse employment action in circumstances that give rise to an inference of unlawful discrimination based on disability.  *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 706-07 (8th Cir. 2002).  Apart from one difference, which is not relevant here, an MHRA claim proceeds the same way as does a claim under the ADA.  *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).

Although the parties hotly contested the question of whether Ms. Rask's depression is a disability, we conclude that we need not resolve that matter because Ms. Rask failed to show that she was qualified to perform the essential functions of

-2-

her job. We have "consistently held that regular and reliable attendance is a necessary element of most jobs," and we see no reason to hold otherwise in the circumstances of this case. *See Pickens v. Soo Line R.R. Co.*, 264 F.3d 773, 777 (8th Cir. 2001) (internal quotation marks and citations omitted), *cert. denied*, 535 U.S. 1057 (2002). While there is evidence in the record that Fresenius had sufficient manpower to staff its operations without Ms. Rask, Ms. Rask made no showing that Fresenius would be able to do so on short notice at times when Fresenius expected her to be at work. We note that Ms. Rask did not have the type of job that could be performed from another site or put off until another time: she cared for seriously ill patients in need of dialysis. *Cf. Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994). After having a history of unpredictable absences, Ms. Rask admitted that she was unable to come to work on a regular and reliable basis when she told her supervisors, "I'm having problems with my medication and … I might miss a day here and there because of it." As discussed below, the specific circumstances of her employment demonstrate that this statement referred to Ms. Rask taking unexcused absences on short notice. Ms. Rask therefore has failed to show that she was qualified to perform the essential functions of her job without an accommodation.

Ms. Rask would nonetheless be qualified under the ADA if a reasonable accommodation would allow her to perform the essential functions of her position. We hold, however, that Fresenius had no duty to accommodate Ms. Rask because she failed as a matter of law to provide sufficient notice of her need. The standard is clear: Where, as here, "the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, *the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations*." *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 689 (8th Cir. 1998) (emphasis in original) (internal quotation marks and citation omitted), *cert. denied*, 526 U.S. 1004 (1999).

A major point of dispute between the parties was whether Ms. Rask provided Fresenius notice of the fact that she was depressed at all. Assuming that she did tell her employer that she was diagnosed with depression, her claim still fails under the criteria laid out in *Wallin*. The closest that Ms. Rask came to satisfying the *Wallin* requirements was in a meeting with two of her supervisors: She attested that she "let them know that I'm having problems with my medication and, you know, would you stand by me, I might miss a day here and there because of it." Even if having problems with medication were a specific identification of a disability, which we doubt, and even if "I might miss a day here and there" were a suggestion of what a reasonable accommodation might be, no reasonable person could find that Ms. Rask "*specifically identif[ied]*" her "*resulting limitations*," *id.*

The point of requiring an employee to provide this kind of information is to allow the employer to understand that the employee suffers from a disability. Without this information the employer is unable to engage in the interactive process required to determine what accommodations might be appropriate and available. *See* 29 C.F.R. pt. 1630, app. at § 1630.9. Because Ms. Rask did not inform Fresenius of the specific limitations that her depression gave rise to, Fresenius had no duty to find an accommodation for her.

We believe, moreover, that even if what Ms. Rask told her employer put it on notice that she was disabled, she did not, in fact, suggest accommodations that were "reasonable," *Wallin*, 153 F.3d at 689. Allowing her to be absent cannot as a matter of law be a reasonable accommodation given the circumstances of Ms. Rask's employment. It is undisputed that Ms. Rask was allowed to modify the number of hours that she worked at will. There is also no dispute that at the time of the meeting with her supervisors mentioned above she was working only two days a week. She therefore already had a lot of time away from work and could take more if she needed it. Talk of having to miss days in this context can refer only to sudden unanticipated absences on the few days when Ms. Rask was actually scheduled to work. The duty

to accommodate "does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability. Thus, if an adjustment or modification is job-related, e.g., specifically assists the individual in performing the duties of a particular job, it will be considered a type of reasonable accommodation. On the other hand, if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide." 29 C.F.R. pt. 1630, app. at § 1630.9. The ability to take sudden, unscheduled absences would not have assisted Ms. Rask in performing the duties of her particular job; they would have been for her personal benefit. Ms. Rask therefore failed to suggest a reasonable accommodation.

Ms. Rask was required to show that she could perform the essential functions of her job either with or without a reasonable accommodation. After having had a history of unexpected absences, she admitted that she could not come to work on a regular and reliable basis, which was essential for her position. Ms. Rask also did not give proper notice to Fresenius that she needed an accommodation; nor did she show that being permitted to miss work on short notice was a "reasonable accommodation" that would have allowed her to perform her job. Thus Ms. Rask failed to offer sufficient evidence to support a finding that she was a "qualified individual," 42 U.S.C. § 12112(a), and the district court properly granted summary judgment to Fresenius on her ADA and MHRA claims.

II.

We turn now to Ms. Rask's FMLA claims. Under the act, an eligible employee is entitled to up to twelve weeks of unpaid leave during a twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). The FMLA prohibits employers from discriminating against employees for using their FMLA leave. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006).

Ms. Rask claims that Fresenius violated the FMLA by terminating her employment based on absences for which she should have been given FMLA leave.

The district court found that Ms. Rask failed to provide Fresenius with sufficient notice that she was taking FMLA leave. *Rask*, 2006 WL 3060143, at *16. The statute does not specify what kind of notice employees are required to give of their intent to take FMLA leave when the need for leave is unforeseeable. But the relevant regulations provide some considerable guidance, and they are generous to employees. Notice must be given "as soon as practicable," but "the employee need not explicitly assert rights under the FMLA or even mention the FMLA" to require the employer to determine whether leave would be covered by the FMLA. 29 C.F.R. § 825.303(a),(b). Instead "the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir.1999), *cert. denied*, 528 U.S. 1050 (1999).

Because a serious health condition is a prerequisite for FMLA leave, an employee must provide information to the employer "to suggest that his health condition could be serious." *See Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990-91 (8th Cir. 2005). The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary "sick-days," or even malingering, as a type of unusual and privileged absence. *See id.* at 991. To hold otherwise would create an unreasonable burden for employers, requiring them to investigate virtually every absence to ensure that it does not qualify for FMLA leave.

Ms. Rask's absences fall into two groups, and by her own admission the FMLA potentially covers only one of them. The first group of absences gave rise to a second written disciplinary warning to Ms. Rask. Because she has admitted that as of that time her supervisors were unaware that she had depression, she can claim no protection for these absences. The second group of absences was noted on the final

written disciplinary notice that accompanied the termination of her employment. The question thus reduces itself to whether the notice that Ms. Rask gave for the second group of absences was sufficient for her absences to be privileged. If it was, then the "but for" cause of Ms. Rask's dismissal might also have been privileged, creating a genuine issue of material fact as to whether her FMLA rights were violated. We conclude that Ms. Rask did not put Fresenius on notice that she had a serious health condition.

Under the FMLA, the "term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves – ... inpatient care ... or ... continuing treatment by a health care provider," 29 U.S.C. § 2611(11), and Ms. Rask's claim is based on continuing treatment. The relevant regulations list several categories of serious health conditions involving continuing treatment, but it appears to us that only one could possibly apply to Ms. Rask, *i.e.*, "[a]ny period of incapacity or treatment for such incapacity due to a chronic health condition." *See* 29 C.F.R. § 825.114(a)(2)(iii). A "chronic health condition" is one that requires periodic visits to a health care provider, continues over an extended period of time, and may cause "episodic rather than a continuing period of incapacity," 29 C.F.R. § 825.114(a)(2)(iii), and "incapacity" – according to another subsection of the regulation – means an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom," 29 C.F.R. § 825.114(a)(2)(i). We therefore conclude that any mental illness or condition that continues over an extended period of time and requires periodic doctor's visits because of, or to prevent, episodes during which the employee cannot perform regular daily activities qualifies as a serious health condition.

As inclusive as this definition is, we believe nevertheless that it does not include depression in all its forms. Depression, like many mental illnesses, is a condition with many variations, and in common parlance the word is used to describe a wide variety of symptoms, including simply "a state of feeling sad," Merriam-Webster Dictionary

(2007); *cf. Ristrom v. Asbestos Workers Local 34*, 370 F.3d 763, 769 (8th Cir. 2004). There is no medical evidence in the record indicating that all forms of diagnosed depression, even if left untreated, would result in incapacity. We therefore think that Ms. Rask would need to apprise Fresenius of more than the mere fact that she had been diagnosed with something called "depression" to put them on notice that she had a serious health condition.

Ms. Rask draws our attention to *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 852 (8th Cir. 2002), where we found that a genuine issue of material fact existed as to whether a bank employee with depression put the bank on notice that she needed FMLA leave by telling them that she would be absent for "depression again." *Id.* at 852. We believe that *Spangler* can be distinguished from this case.

In *Spangler* there was a "great deal of evidence of the Bank's awareness of [Ms. Spangler's] mental condition. She informed several supervisors of her illness throughout the time that she was employed with the Bank." *Id.* In addition, Ms. Spangler had taken two formal leaves of absence to obtain treatment for her depression, and bank management had discussed, apparently among themselves, the fact that Ms. Spangler was absent from work for treatment of depression. *Id.* at 848-49. The bank was therefore aware that Ms. Spangler had a chronic condition that required treatment to deal with incapacity: In short, they knew that she had a serious health condition. When Ms. Spangler called on the day of her final absence and informed the bank that she would be gone for "depression again," this put the bank on notice that she required FMLA leave.

Ms. Rask argues that her case is like *Spangler* because she told her supervisor on the day before her final absence that she would be absent for "help with my medication still, I'm still having a lot of side effects from what they put me on." She maintains that this statement should have the same effect that the *Spangler* court gave

to the employee's statement that she needed to be absent because she had "depression again." Fresenius, however, did not have the contextual knowledge that the employer in *Spangler* had that would link these statements with a serious health condition. The closest equivalent in this case to the leaves of absence in *Spangler* was an incident when Ms. Rask left work early because a new medication allegedly made her too confused and anxious to continue working. Ms. Rask attested that at this point the best informed of her supervisors, Patty Pederson, who allegedly knew that she was "depressed," also "knew about my medication management." Ms. Rask attested that on the day when she left work she "went and told Patty that I needed to leave, I'm not feeling right, my medication, I'm having side effects from it or something." In addition, at a disciplinary meeting after the incident Ms. Rask attested, in an apparent effort to explain the incident, that she "let [her supervisors] know that I'm having problems with my medication and … I might miss a day here and there because of it."

We conclude that there is no evidence in the record that Ms. Rask at any point gave her supervisors any details about her depression, its severity, or any incapacity that it might give rise to, sufficient to indicate that it, as opposed to the side effects from her medication, was serious. The side effects in this case are not covered by the FMLA because there was no evidence that they were a "chronic health condition." 29 C.F.R. § 825.114(a)(2)(iii). It is true that Ms. Rask attested that her other supervisor, Christine Mitchell, responded to her explanations at the disciplinary meeting by saying "Well, this is the first time I've heard about any depression or anything." But even if Ms. Mitchell did say that, the statement would indicate only that Fresenius knew that Ms. Rask was "depressed" with all the ambiguity that the word entails. When Ms. Rask said that she would be absent for "help with my medication," Fresenius lacked any context to indicate that the side effects of Ms. Rask's medications were not the cause of the absence. It also lacked any context to link this absence with a serious health condition.

The evidence in this case simply cannot support a finding that Fresenius was on notice that Ms. Rask needed FMLA leave. The regulations already make it very

easy for Ms. Rask to give notice of her intent to take leave. She is not required to understand when she may take FMLA leave, or to state explicitly that she intends to take FMLA leave, or, indeed, even to know that the FMLA exists. All she has to do is apprise her employer of the specifics of her health condition in a way that makes it reasonably plain that it is serious and tell her employer that this is why she will be absent. Her employer would then have the duty to investigate whether she is entitled to FMLA leave. Because Ms. Rask failed to do this, her claim must fail.

III.

Affirmed.

_____