# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 14-2495

———————————————

Marissa Walz

*Plaintiff - Appellant*

v.

Ameriprise Financial, Inc.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: February 12, 2015
Filed: March 9, 2015

——————————

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Marissa Walz sued Ameriprise Financial, Inc. ("Ameriprise") alleging wrongful termination and failure to accommodate her disability. The district court[1]

———————————

[1]The Honorable Richard H. Kyle, United States District Court for the District of Minnesota.

granted Ameriprise's motion for summary judgment. Walz appeals this decision, and we affirm.

## I.

Marissa Walz worked for Ameriprise from 1996 to 2012 and received mostly positive reviews. Most recently, Walz worked as a Process Analyst in Ameriprise's Enterprise Operations Support department. Walz admitted that the ability to work well with others was important for her job. Walz also admitted that the Process Analyst position required people, teamwork, communication, and time-management skills. In fact, Walz was recruited for her position in part because she was "good at relationships."

Walz suffers from bipolar affective disorder, which caused her to interrupt meetings, disturb her coworkers, and disrespect her supervisor. Walz's behavioral problems were noticed first on March 16, 2012 when, during a meeting, she told a coworker to "[s]top interrupting me, you don't know what you are talking about," and then proceeded to scribble illegible notes on a whiteboard. After this incident, Walz's supervisor, Thad Radel, began documenting her conduct. Several of Walz's coworkers were disturbed by her behavior and independently reported their concerns to Radel. For instance, one coworker described Walz as "[m]anic" and explained that Walz was "[t]alking very rapidly and not making sense," "excited and easily agitated," and "sending e-mails that do not make sense."

Radel approached Walz several times to discuss her behavioral problems and to offer help. On March 19, 2012, after hearing reports from Walz's coworkers, Radel approached her to ask if she was okay. Walz was agitated and disparaged her coworkers. Walz also was rude and insubordinate towards Radel, stating, "[n]o one thinks your position is necessary" and "[t]here is no sense of direction since you came on board." Walz claimed that a coworker had referred to Radel as a "puppet." Radel

spoke with Walz again the next morning and Walz was similarly erratic—even challenging Radel to fire her. Immediately after that encounter, Walz attended a meeting that she had scheduled with a group of coworkers. At the meeting, Walz spoke in an erratic and confusing fashion that disturbed her peers. Walz abruptly ended the meeting after fifteen minutes and left visibly upset.

Eventually, after coworkers complained further and Radel made another failed attempt to speak with Walz concerning her conduct, Radel issued Walz a formal behavioral warning. Walz then applied for Family Medical Leave Act ("FMLA") leave, which was granted by Ameriprise's third-party vendor that handles such requests. Walz never disclosed the reason for her FMLA leave to Ameriprise. Upon returning from leave, Walz gave Radel a note from her doctor at Allina Mental Health Services that cleared her to return to work for a maximum of forty hours per week and stated, "[s]he has been stabilizing on her medication." Walz also reviewed and signed Ameriprise's Individual Treatment Policy, which explained Ameriprise's policy against disability discrimination and the process for requesting accommodations.

A few months after returning to work, Walz's erratic and disruptive behavior returned. On July 27, 2012, Walz was aggressive with coworkers during a meeting. Radel warned Walz to be more gentle, but Walz repeated her erratic and intimidating behavior in later meetings. Ameriprise fired Walz because of her repeated misconduct. At no point did Walz inform Ameriprise that she suffered from bipolar disorder or request any accommodation.

Walz sued Ameriprise, alleging that Ameriprise terminated her because of her disability in violation of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). Ameriprise moved for summary judgment. The district court interpreted Walz's complaint as raising two claims: (1) that she was wrongly terminated based on her bipolar disorder and (2) that Ameriprise improperly failed to accommodate her disorder. With respect to the wrongful termination claim,

the court concluded that Walz failed to establish a prima facie case because she did not show that her termination was based on her disability. As to the failure to accommodate claim, the court reasoned that this claim failed because Walz never requested an accommodation. Walz now appeals.

II.

We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (quoting *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013)) (internal quotation marks omitted). A complete failure by the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007) (quoting *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006)). ADA and MHRA claims generally are analyzed in the same way, with one exception that is not relevant here. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).

To establish a prima facie wrongful-termination claim, Walz must show she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of her disability. *Kallail v. Alliant Energy Corporate Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012). The district court held that Walz failed to establish the third element of her prima

facie case because she did not show that her termination was based on her disability. We decline to reach this question and instead affirm the district court's judgment on the basis that Walz failed to raise a genuine issue of material fact with respect to the second element, that she was a qualified individual. *See Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003) ("[W]e may affirm a district court's order, including an order granting summary judgment, on any basis supported by the record, even if that ground was not considered by the district court." (quoting *Viking Supply v. Nat'l Cart. Co., Inc.*, 310 F.3d 1092, 1097 (8th Cir. 2002))). Because Walz failed to make a showing sufficient to establish the existence of an essential element of her wrongful-termination claim, summary judgment is appropriate. *See Celotex Corp.*, 477 U.S. at 322-23.

Whether an individual is qualified within the meaning of the ADA is determined by applying a two-part test. *Wal-Mart Stores, Inc.*, 477 F.3d at 568-69. The first part is whether Walz "possesses the requisite skills, education, certification or experience necessary for the job," and the second part is whether Walz "can, despite [her] impairments, perform the essential functions of the job either with or without reasonable accommodation." *See id.* (quoting *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1047-48 (8th Cir. 1999)). Walz was a longtime employee of Ameriprise, and the record does not indicate that she lacked any credentials for her employment. Accordingly, our analysis hinges on whether Walz could perform the essential functions of her position with or without reasonable accommodation. *See Browning*, 178 F.3d at 1047-48.

Essential functions are "the fundamental job duties of the employment position." *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir. 1998) (quoting 29 C.F.R. § 1630.2(n)(1)). "The term 'essential functions' does not include the marginal functions of the position." *Id.* (quoting 29 C.F.R. § 1630.2(n)(1)). *See Wal-Mart Stores, Inc.*, 477 F.3d at 568-69 (listing factors from 29 C.F.R. § 1630.2(n)(3)). Here, Walz failed to establish a genuine issue of material fact as to

whether she could perform the essential functions of her position with or without reasonable accommodation. There is no dispute that the ability to work well with others was an essential function of Walz's employment as a Process Analyst. *See* EEOC Enforcement Guidance: Applying Performance and Conduct Standards to Employees with Disabilities, 2008 WL 4786697, at *2 (Sept. 25, 2008) (explaining, "the ability to work with other people" may be a job-related requirement). Walz herself admitted that the "ab[ility] to work well with others" was important for her job. Walz further admitted that people, teamwork, and communication skills were needed for her position. Walz also explained that being respectful was important for her job and that she originally was recruited to her position because she was skilled at managing interpersonal relationships.

The record in this case shows that Walz's behavior was erratic, aggressive, and rude in a way that disturbed her coworkers and disrupted the workplace. Walz interrupted meetings, disrespected her supervisor, and communicated in an erratic and unintelligible manner. And Walz acknowledges that her behavioral problems were symptoms of her bipolar disorder and concedes that her behavior was disruptive. Accordingly, Walz's disruptiveness and rudeness prevented her from working well with others—an essential function of her position. Therefore, Walz cannot make a sufficient showing that she was able to perform the essential functions of her position without an accommodation. *See Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 470 (8th Cir. 2007).

Walz nonetheless may be qualified under the ADA if a reasonable accommodation would allow her to perform the essential functions of her position. *See id.* But because Walz failed to inform Ameriprise of her disability or request any accommodation, Ameriprise had no duty to accommodate her. *See id.*; 29 C.F.R. § 1630.9(a) ("It is unlawful for a covered entity not to make reasonable accommodation to the *known physical or mental limitations* of an otherwise qualified applicant or employee with a disability . . . ." (emphasis added)). Where a "disability,

resulting limitations, and necessary accommodations, are not open, obvious, and apparent to the employer," a plaintiff who fails to disclose her disability and request an accommodation from her employer cannot show that she is qualified with accommodation. *Rask*, 509 F.3d at 470 (quoting *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 689 (8th Cir. 1998)).

Here, Walz's disability, its limitations, and necessary accommodations were not open, obvious, and apparent to Ameriprise. *See id.* (explaining that mental disabilities are often non-obvious). The closest Walz came to disclosing her bipolar disorder was when she gave Radel her doctor's note upon returning from FMLA leave. The note, from a doctor affiliated with Allina Mental Health Services, permitted Walz to return to work for up to forty hours per week and explained that her medication had stabilized her condition. The note did not inform Ameriprise of Walz's bipolar disorder, nor did it suggest any accommodations. Walz argues that Radel, and therefore Ameriprise, knew that Walz's conduct was caused by a serious mental illness and that this constituted sufficient notice of Walz's disability. In Walz's view, her erratic behavior, FMLA leave, and medical note sufficiently put Ameriprise on notice that she was suffering from some type of mental illness. Radel did acknowledge that, after receiving the doctor's note, he surmised that Walz had been treated for her mental health. Even if these facts were sufficient to notify Ameriprise that Walz suffered from bipolar disorder, they did not specifically identify Walz's resulting limitations. *See id.* (holding that an employee's statements that she was "having problems with my medication" and "might miss a day here and there" did not specifically identify the employee's resulting limitations). Because Walz failed to disclose her non-obvious disability and any related limitations, she did not establish a genuine issue of material fact as to whether she was able to perform the essential functions of her job with reasonable accommodation. *See id*. at 470-71. Thus, Walz fails to make a prima facie case of wrongful termination.

Walz nonetheless argues that Ameriprise failed to raise the issue whether Walz was a qualified individual before the district court. *See Torgerson*, 643 F.3d at 1042 (explaining that a movant for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" (quoting *Celotex Corp.*, 477 U.S. at 323)). In support of this argument, Walz points to the district court's statement that Ameriprise did not dispute whether Walz was qualified. But the record belies her argument. Ameriprise argued in support of its motion for summary judgment that Walz failed to establish a prima facie case. And in support of this argument, Ameriprise analogized this case to the facts of *Rask*, which affirmed summary judgment for an employer on the basis that the plaintiff failed to make a prima facie showing that she was a qualified individual within the meaning of the ADA. 509 F.3d at 470. Accordingly, we affirm the district court's grant of summary judgment for Walz's wrongful-termination claim on the alternative basis that Walz failed to make a prima facie showing that she was qualified for her position.

Walz's freestanding failure-to-accommodate claim similarly fails to raise a genuine issue of material fact because she never requested an accommodation. *See Ballard v. Rubin*, 284 F.3d 957, 964 (8th Cir. 2002) (holding that an employer is not liable for its failure to accommodate an employee who made no request for an accommodation). Walz argues that Ameriprise "should have forced her on FMLA leave" as an accommodation. According to Walz, her erratic behavior, prior FMLA leave, and medical note should have put Ameriprise on notice that she was suffering from a medical problem, and Ameriprise should have responded to this information by forcing her to take leave. But Walz concedes that she received FMLA leave when she requested it. Moreover, Radel suggested multiple times in response to Walz's behavioral problems that she should take time off if she needed. In sum, there is nothing in the record that raises a genuine dispute about whether Walz ever requested any accommodation. Walz cites no case holding that an employer has a duty to guess an employee's disability and force that employee to take leave, and we decline to so hold here.

III.

We affirm the district court's grant of summary judgment to Ameriprise.

_____