Coutard v. Municipal Credit Union

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2015

(Argued: February 10, 2016                    Decided: February 9, 2017)

Docket No. 15-1113

_____

FRANTZ COUTARD,

*Plaintiff-Appellant*,

- v. -

MUNICIPAL CREDIT UNION,

*Defendant-Appellee*.

_____

Before:  KEARSE, POOLER, and SACK, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Eastern District of New York, Eric N. Vitaliano, *Judge*, dismissing plaintiff's complaint alleging that his former employer interfered with and denied his right under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*., to take leave in order to take care of his seriously ill grandfather who, *in loco parentis*, had raised him as a child.  The district court granted defendant's motion for summary judgment dismissing the complaint on the ground that, although the FMLA provides that an eligible employee such as plaintiff may be entitled to leave to care for a person with whom he had an *in loco*

*parentis* relationship as a child, plaintiff had informed defendant that he needed to take care of his grandfather without mentioning the *in loco parentis* relationship. On appeal, plaintiff contends principally that the district court erred in ruling that his failure to mention the nature of the relationship was dispositive, given the facts, acknowledged by defendant, that defendant did not inform its employees that an *in loco parentis* relationship could entitle them to FMLA leave, did not inquire whether plaintiff had such a relationship with his grandfather, and instead, when plaintiff requested such leave, responded categorically that he was not entitled to FMLA leave to care for a grandparent. Plaintiff asks that we reverse that ruling and order that partial summary judgment on the issue of liability be granted in his favor. We hold that because plaintiff met the eligibility requirements for FMLA leave and requested that leave expressly to care for his seriously ill grandfather, defendant as an employer covered by the FMLA had an obligation to specify any additional information that it needed in order to determine whether plaintiff was entitled to such leave. We conclude that the district court erred in granting summary judgment to defendant, but that plaintiff was not entitled to partial summary judgment in his favor.

Vacated and remanded.

ABDUL K. HASSAN, Queens Village, New York (Abdul Hassan Law Group, Queens Village, New York, on the brief), *for Plaintiff-Appellant*.

DOUGLAS E. MOTZENBECKER, New York, New York (Gordon & Rees, New York, New York, on the brief), *for Defendant-Appellee*.

2

KEARSE, *Circuit Judge*:

Plaintiff Frantz Coutard appeals from a judgment of the United States District Court for the Eastern District of New York, Eric N. Vitaliano, *Judge*, dismissing his complaint alleging that his employer defendant Municipal Credit Union ("MCU") denied him leave and terminated his employment in violation of the Family and Medical Leave Act of 1993 ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.*, after Coutard sought leave to take care of his seriously ill grandfather who, *in loco parentis*, had raised him as a child. The district court granted MCU's motion for summary judgment dismissing the complaint on the ground that, although the FMLA provides that an eligible employee may be entitled to take leave in order to care for a person with whom he had an *in loco parentis* relationship as a child, Coutard had informed MCU merely that he needed to take care of his grandfather without informing MCU of the *in loco parentis* relationship. On appeal, Coutard contends principally that the district court erred in ruling that his failure to mention the nature of the relationship was dispositive, given the undisputed facts that MCU did not inform its employees that an *in loco parentis* relationship could entitle them to FMLA leave, did not inquire whether Coutard had such a relationship with his grandfather, and, when he requested FMLA leave, responded categorically that the FMLA did not entitle him to such leave to care for a grandparent. Coutard asks that we reverse the dismissal of his complaint and order that partial summary judgment on the issue of liability be granted in his favor. For the reasons that follow, we hold that because Coutard met the eligibility requirements for FMLA leave and requested that leave expressly to care for his seriously ill grandfather, MCU as an employer covered by the Act had an obligation to specify the additional information that it needed in order to determine whether he was entitled to such leave. We conclude that the district court erred in granting summary judgment to MCU on the basis that Coutard had failed

3

to provide the necessary information, given MCU's denial of Coutard's request without requesting additional information. In light of other facets of the record, we conclude that Coutard was not entitled to partial summary judgment in his favor.

## I. BACKGROUND

Coutard sought leave under the FMLA to care for his grandfather Jean Manesson Dumond. According to Coutard, Dumond had raised Coutard as his son from before the age of four, after Coutard's father died, until Coutard was approximately 14. In January 2013 Dumond--who had suffered a stroke in 2011--lived with Coutard, was 82 years old, and suffered from a number of chronic medical conditions, including diabetes, hypertension, asthma, prostate cancer, high cholesterol, and heart disease. On the evening of January 22, 2013, Dumond was taken to a hospital by ambulance; he was diagnosed with bronchitis, and was discharged on January 23. Coutard, believing that Dumond was seriously ill and should not be left unattended, determined to stay home and care for him until Coutard could secure the assistance of a home health aide, and he sought FMLA leave to do so. MCU denied him leave, and when he remained at home to care for Dumond, MCU terminated his employment.

In this action alleging that MCU's actions interfered with and violated Coutard's right under the FMLA, both sides moved for summary judgment. Certain of the facts, and the applicability of certain basic legal principles, are undisputed.

It is undisputed that MCU, a financial institution, was an employer to which the FMLA applied throughout January 2013; that Coutard was employed by MCU from July 18, 2011, to

4

February 4, 2013; and that in the 12 months preceding his January 23, 2013 request for FMLA leave, Coutard worked for MCU for more than 1250 hours and was within the FMLA's definition of employees who were "eligible," 29 U.S.C. § 2611(2)(A), to take leave in order to care for a person deemed a family member by the FMLA, *see id*. § 2612(a)(1). Such persons include a grandfather who stood *in loco parentis* to the employee when the employee was a child under the age of 18. *See id*. §§ 2612(a)(1)(C), 2611(7), 2611(12)(A).

In granting MCU's motion for summary judgment, the district court also found it undisputed that

> Coutard was raised by his maternal grandfather, Jean Manesson Dumond, after his biological father passed away before Coutard's fourth birthday. Dumond acted in all respects as [Coutard's] father--feeding him, clothing him, paying for his education, taking him to school, providing emotional and social support. In fact, Dumond referred to Coutard as his son.

Memorandum and Order dated April 9, 2015 ("D.Ct. Ord."), at 1-2 & n.1 (internal quotation marks and citations to Plaintiff's Rule 56 Statement of Material Undisputed Facts ("Coutard's Rule 56.1 Statement") omitted).

In January 2013, when Coutard requested FMLA leave to care for Dumond, it is undisputed that "*MCU informed Coutard that* he could not take FMLA leave to care for his grandfather, because *the statute does not apply to grandparents . . . .*" (Defendant's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment ("MCU's Rule 56.1 Statement") ¶ 12 (emphases added).) The district court stated as follows:

> On January 23, 2013, following Dumond's bronchitis episode, plaintiff took leave from MCU to care more intensively for him. . . . To provide th[e necessary] level of care for his grandfather, Coutard absented himself from work from January 23, 2013 to February 4, 2013.

5

Prompted by his grandfather's bout with bronchitis, *plaintiff requested to take FMLA leave from MCU, but it was denied on the ground that grandparents are not covered under the Act.* Critically, although defendant never informed Coutard that grandparents could be covered under the FMLA, depending on the circumstances, *Coutard admits that he never notified MCU, at the time he made the FMLA request or at any relevant point thereafter, that Dumond had raised him as if he were his father.* Specifically, *Coutard admits, he merely asked MCU whether he would be permitted to take leave for his grandfather and did not provide MCU with specific information about his personal circumstances or suggest that his grandfather might stand in loco parentis with him.* Following his inquiry, though MCU did not permit him to take FMLA leave, it did advise him to apply for a short-term leave of absence under a separate MCU personnel policy. Coutard then took no action, applying neither for the FMLA leave nor the short-term company leave.

. . . . Because he was absent for more than two consecutive days without leave, on February 4, 2013, MCU notified him by letter that his employment was terminated due to job abandonment.

D.Ct. Ord. at 3-4 (internal quotation marks--as well as citations to Coutard's Rule 56.1 Statement, MCU's Rule 56.1 Statement, Defendant's Counterstatement of Disputed Facts in Opposition to Plaintiff's Motion for Summary Judgment ("MCU's Rule 56.1 Counterstatement"), and Plaintiff's Counterstatement of Facts in Response to Defendant's Rule 56 Statement of Material Facts--omitted) (emphases added).

Coutard argued that he would have informed MCU about the *in loco parentis* relationship with his grandfather had he been asked or had he known of those FMLA provisions. However, he stated,

[d]efendant . . . never informed me that grandfathers are in fact covered by the FMLA if an in loco parentis relationship exists. If defendant or [its benefits manager with whom Coutard spoke] had informed me about the FMLA's in loco parentis coverage or had requested information as to whether grandpa Dumond had an in loco parentis relationship with me when I was a child, I would have gladly and promptly provided such information.

(Declaration of Frantz Coutard dated May 12, 2014, ¶ 23.)

6

In response, MCU took the position that it was not obligated to inform employees affirmatively of the FMLA's coverage of *in loco parentis* relationships. (*See, e.g.*, MCU Memorandum of Law in Opposition to Coutard's Motion for Summary Judgment ("MCU's Opposing Mem.") at 1-2, 7-8.) MCU pointed out that United States Department of Labor ("DOL") regulations promulgated under the FMLA allowed employers to post a DOL form provided in Appendix C to 29 C.F.R. Part 825 ("Appendix C") in satisfaction of their duties to provide employees with "a notice explaining the Act's provisions," 29 C.F.R. § 825.300(a)(1); *see id*. § 825.300(a)(4). Based on part of the DOL form provided in Appendix C--submitted to the district court by MCU in support of its motion for summary judgment (*see* Declaration of Douglas E. Motzenbecker dated May 12, 2014 ("Motzenbecker Declaration"), Exhibit J)--MCU argued that the employee has the burden, at the time he requests FMLA leave, to provide all of the facts needed to show his entitlement to that leave. (*See* MCU's Opposing Mem. at 2-3, 6-7.)

The district court agreed with MCU's position. It stated that in order to prevail on his FMLA claim, Coutard was required to prove five elements, to wit,

> (1) that he [wa]s an eligible employee; (2) that defendant constitute[d] an employer covered by the Act; (3) that he was entitled to leave; (4) that he gave notice to his employer of his intention to take leave; and (5) that his employer denied him benefits that he was entitled to under the Act,

D.Ct. Ord. at 8, "the only one in material controversy [being] the fourth," *id*. at 9. The court framed the dispositive issue as "whether Coutard sufficiently notified MCU of Dumond's *in loco parentis* relationship with him and that it was on that basis he sought FMLA leave," *id*. It quoted a regulation that requires an employee to "'provide sufficient information'" to indicate that "'the FMLA *may* apply to the leave request,'" and requires the "'employer'" to seek "'any additional . . . information'" needed

7

for it to determine "'whether the leave *is* FMLA-qualifying,'" *id*. at 11-12 (quoting 29 C.F.R. § 825.303(b) (emphases ours)). But the court concluded that the employee's obligation is to provide the employer with all of the needed information "at or before the time he requests leave." D.Ct. Ord. at 14. It stated:

> Under 29 C.F.R. § 825.303(b), to seek leave for the unforeseeable illness of an immediate family member, such as a parent, an employee must "provide sufficient information for an employer to reasonably determine *whether the FMLA may* apply to the leave request." Further, "*[w]hen an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA*." *Id*. "*The employer will be expected to obtain any additional required information through informal means*," and "the employee has an obligation to respond to an employer's questions designed to determine whether an absence is *potentially* FMLA-qualifying." *Id*. . . . Similarly, pursuant to 29 C.F.R. § 825.300(b), an employer becomes obligated to notify the employee of his eligibility to take FMLA leave "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave *may be for an FMLA-qualifying reason*." The employer's notification requirements come into effect once "the employer has enough information to determine whether the leave *is* being taken for a FMLA-qualifying reason." *Id*. at § 825.300(d)(1), (2).

> In determining the adequacy of the notice given by the employee, [t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off. . . . While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant. . . . An employer's duty to conduct further inquiry into a request for leave is triggered when an employee gives sufficient notice of a . . . need for the requested leave. . . .

> . . . *FMLA is not triggered unless* the employee can later show that *the employer should have reasonably understood*, **at the time of the request**, *that the expressed need for leave* **was** *covered by FMLA*. . . .

> Overall, an employee *will be found to have failed to sufficiently explain* his reasons for needed leave, and the burden of inquiry will not shift to the employer *if he does not*, **at or before the time he requests leave**, *explain that his grandparent had raised him and it was that relationship*, as opposed to the

8

blood-grandfather relationship, *that brought his request under the FMLA umbrella*.

D.Ct. Ord. at 11-15 (footnote and other internal quotation marks omitted (emphases ours)).

Because Coutard did not inform MCU of the *in loco parentis* relationship when he requested FMLA leave, the court granted MCU's motion for summary judgment and dismissed the complaint. This appeal followed.

## II. DISCUSSION

On appeal, Coutard contends principally that he provided MCU with sufficient information to permit it to understand that his leave request was potentially within the scope of the FMLA, and that if he did not provide sufficient information it was only because MCU failed in its obligations (a) to provide him with information as to his right to seek such leave under the Act's *in loco parentis* provision, and (b) to request further information from him. For the reasons that follow, we conclude that MCU was required to make further inquiry of Coutard before denying his request for FMLA leave, and we vacate the judgment and remand for further proceedings. We reject MCU's contention that the district court's dismissal of the complaint can be upheld on other grounds, *see* Part II.C. below; and we reject Coutard's request that we order the grant of partial summary judgment on the issue of liability in his favor, *see* Part II.D.

A. *The FMLA and the Regulations Implementing It*

The FMLA provides generally that a covered employer is required to grant an eligible employee up to a total of 12 weeks of leave during any 12-month period for personal or family needs indicated in the Act. *See* 29 U.S.C. § 2612(a). There are four principal facets to the scope of the Act: (1) the employers to which it applies, (2) the employees who are eligible for FMLA leave, (3) the personal or family relationship in question, and (4) the qualifying reasons for the requested leave.

An FMLA-covered "employer" includes "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). With respect to a covered employer that has at least 50 employees within 75 miles of the employee's worksite, *see id*. § 2611(2)(B)(ii), the Act defines an "eligible employee," in pertinent part, as

> an employee who has been employed--
>
> > (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
> >
> > (ii) for at least 1,250 hours of service with such employer during the previous 12-month period,

*id*. § 2611(2)(A); *see also* 29 C.F.R. § 825.110(a) (so defining "eligible employee").

In general, with respect to "Entitlement to leave," the FMLA provides in part that (subject to the employer's right to request certification from a health care provider, *see* 29 U.S.C. § 2613),

> *an eligible employee* shall be *entitled* to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

. . . .

> (C) *In order to care for* the spouse, or *a* son, daughter, or *parent, of the employee*, *if such* spouse, son, daughter, or *parent has a serious health condition*,

*id*. § 2612(a)(1)(C) (emphases added).  The term "parent" is defined to include not only the employee's biological parent but also "an individual who stood in loco parentis to an employee when the employee was a son or daughter," *id*. § 2611(7); "son or daughter," to the extent pertinent here, is defined to include "a child[,] of a person standing in loco parentis, who is . . . under 18 years of age," *id*. § 2611(12).

The FMLA provides that covered employers must conspicuously "post . . . a notice, to be prepared or approved by the [DOL], setting forth excerpts from, or summaries of, the pertinent provisions of th[e Act]," *id*. § 2619(a), and that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under th[e Act]," *id*. § 2615(a)(1).

With respect to interference claims under the FMLA, our Court has "formally adopt[ed]" the "standard regularly used by district courts of this Circuit"--which was used by the district court in this case--that is, that to prevail on an interference claim,

> a plaintiff must establish:  1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) *that she gave notice to the defendant of her intention to take leave*; and 5) that she was denied benefits to which she was entitled under the FMLA.

*Graziadio v. Culinary Institute of America*, 817 F.3d 415, 424 (2d Cir. 2016) ("*Graziadio*") (emphasis added).  We did not, however, have occasion to consider what constitutes notice that is sufficient.  *See id*. at 425 ("Defendants have not questioned the adequacy of Graziadio's notice . . . .").  Although the

11

adequacy of notice is usually a fact-specific question, the determinative issue on this appeal is whether the district court correctly interpreted the DOL regulations in determining what kind of notice Coutard was required to provide.

The regulations in effect at the time Coutard requested FMLA leave from MCU, *see* 29 C.F.R. pt. 825 (2009), include instructions as to the proper timing and contents of the notice that an employee is required to give an employer in order to take such leave, and the notice that employers must provide to employees as to their rights under the Act. As pertinent here, the regulation governing the notice that an employee must give the employer as to his need for leave that was not foreseeable provided as follows:

> (a) *Timing of notice*. When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable . . . .
>
> (b) *Content of notice*. An employee shall provide sufficient information for an employer to reasonably determine *whether the FMLA **may** apply to the leave request*. Depending on the situation, such information may include . . . whether the employee or the employee's family member is under the continuing care of a health care provider . . . or if the leave is for a family member that the condition renders the family member unable to perform daily activities . . . . *When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. . . . The **employer will be expected to obtain any additional required information** through informal means.*

29 C.F.R. §§ 825.303(a) and (b) (emphases added); *see also id*. § 825.302(c) (with respect to foreseeable needs, "the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought").

The regulation in 29 C.F.R. § 825.300 prescribed the notice that must be given by a covered employer:

12

(a) *General notice*. (1) *Every employer covered by the FMLA is required to post* and keep posted on its premises, *in conspicuous places* where employees are employed, *a notice explaining the Act's provisions . . . .*

. . . .

(3) *If an FMLA-covered employer has any eligible employees, it shall also provide this general notice to each employee* by including the notice in employee handbooks or other written guidance to employees concerning employee benefits or leave rights, if such written materials exist, or by distributing a copy of the general notice to each new employee upon hiring. In either case, distribution may be accomplished electronically.

(4) *To meet the requirements of paragraph (a)(3) of this section, employers may duplicate the text of the notice contained in Appendix C of this part or may use another format so long as the information provided includes, at a minimum, all of the information contained in that notice.*

29 C.F.R. §§ 825.300(a)(1), (3), and (4) (emphases added).

(b) *Eligibility notice*. (1) When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave *may be* for an FMLA-qualifying reason, *the employer must notify* the employee of the employee's *eligibility* to take FMLA leave within five business days, absent extenuating circumstances.

29 C.F.R. § 825.300(b)(1) (emphases added); *see also id*. § 825.300(c)(5) ("Employers are also expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA."); *id*. § 825.300(e) ("Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights.").

"Appendix C to Part 825--Notice to Employees of Rights under FMLA (WH Publication 1420)," referred to above in § 825.300(a)(4), provides a form ("DOL Form" or "Form"), that employers may use to inform employees of their rights under the FMLA. The DOL Form is titled "EMPLOYEE RIGHTS AND RESPONSIBILITIES UNDER THE FAMILY AND

13

MEDICAL LEAVE ACT" and includes sections headed "Basic Leave Entitlement," "Eligibility Requirements, "Employee Responsibilities," and "Employer Responsibilities."

Under "**Basic Leave Entitlement**," the DOL Form states, in pertinent part, as follows:

> FMLA requires covered employers to provide up to 12 weeks of unpaid job-protected leave to eligible employees for the following reasons:
>
> . . . .
>
> • to care for the employee's spouse, son or daughter, or parent, who has a serious health condition . . . .

29 C.F.R. pt. 825, App'x C. As this "Basic Leave Entitlement" section of the DOL Form does not mention that the term "parent" includes a person who, when the employee was a child, served *in loco parentis* to the employee, MCU argues that it was not required to inform employees of those provisions of the Act.

However, the DOL Form, after defining or describing, *inter alia*, eligibility requirements, protections, and serious health conditions, goes on to describe the notice responsibilities of employees and employers, in pertinent part, as follows:

> **Employee Responsibilities**
>
> . . . .
>
> Employees must provide sufficient information for the employer to determine if the leave *may* qualify for FMLA protection . . . .
>
> **Employer Responsibilities**
>
> *Covered employers must inform employees* requesting leave *whether they are eligible* under FMLA. *If they are, the notice must specify any additional information required* . . . .

29 C.F.R. pt. 825, App'x C (emphases added).

14

Thus, the "Responsibilities" sections of the DOL-prescribed notice and the related regulations establish that if an eligible employee provides sufficient information for the employer reasonably to determine that the requested leave "may" qualify for FMLA protection, the employer "must" specify whether, and what, additional information is required for a determination of whether the employee is entitled to such leave.  *Id*.; *see* 29 C.F.R. § 825.303(b).

An employer is not required to use the DOL Form; but if it does not, "the information provided" by the employer must "*include*[], at a minimum, *all of the information contained in that [Appendix C] notice*."  29 C.F.R. § 825.300(a)(4) (emphases added).  Thus, whether or not the DOL Form is used, a covered employer "must" inform employees both (a) that they need provide only sufficient information to show that the requested leave reasonably "may" be FMLA-qualifying, and (b) that if an eligible employee provides such information and the employer needs additional information it is the employer's responsibility to seek such additional information.  29 C.F.R. pt. 825, App'x C; *see* 29 C.F.R. § 825.300(a)(4); *id*. § 825.303(b).

In light of these regulations, we conclude that the obligation of an employee to give notice of his need for FMLA leave is not the obligation, imposed by the district court on Coutard, to provide the employer with all of the necessary details to permit a definitive determination of the FMLA's applicability at or before the time of the request.  Rather, in the absence of a request for additional information, an employee has provided sufficient notice to his employer if that notice indicates reasonably that the FMLA may apply.  *See, e.g.*, *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294 (3d Cir. 2012) (interpreting the 2009 version of § 825.303).

In *Lichtenstein*, the district court had summarily dismissed an FMLA claim because the notice given by the employee had described a circumstance that "'might not'" qualify for FMLA

leave, *id*. at 304. The Third Circuit reversed the grant of summary judgment. In considering "the specificity of information employees must provide to adequately notify employers of unforeseeable FMLA leave," *id*. at 296, the court of appeals concluded that

> the District Court answered the wrong question. The question is not whether the information conveyed to the employer necessarily rules out non-FMLA scenarios. The question is whether the information allows an employer to "*reasonably* determine whether the FMLA *may* apply." 29 C.F.R. § 825.303(b) (emphases added). Reasonableness does not require certainty, and "may" does not mean "must,"

691 F.3d at 304.

We note that a prior version of § 825.303 did not contain the above "FMLA may apply" language; it provided that an employee, in giving notice, "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed," and that "[t]he employer will be expected to obtain any additional required information through informal means," 29 C.F.R. § 825.303(b) (1995). But even that earlier regulation's less specific language has been interpreted as meaning that an employee need only provide the employer with sufficient information to understand that the circumstances indicate that the FMLA "may" apply. *See, e.g.*, *Rask v. Fresenius Medical Care North America*, 509 F.3d 466, 471 (8th Cir. 2007) ("[T]he employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee *may* be in need of FMLA leave." (internal quotation marks omitted (emphasis ours))), *cert. denied*, 554 U.S. 919 (2008); *Burnett v. LFW Inc.*, 472 F.3d 471, 479 (7th Cir. 2006) ("The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA-qualifying condition. . . . [T]he employee's duty is merely to place the employer on notice of a *probable* basis for FMLA leave. . . . [E]mployers . . . are entitled to the sort of notice that will inform them . . . that

the FMLA *may* apply." (internal quotation marks omitted (emphases in *Burnett*))); *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1130-31 (9th Cir. 2001) ("[I]t is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act. . . . Employees need only notify their employers that they will be absent under circumstances which indicate that the FMLA *might* apply . . . . In short, the employer is responsible, having been notified of the reason for an employee's absence, for being aware that the absence *may* qualify for FMLA protection." (emphasis added)).

We conclude that the district court erred in ruling that Coutard was required, at the time of his request, to provide MCU with all of the information it needed to determine with certainty that his requested leave was within the FMLA.

MCU asks us to reach the contrary conclusion, relying principally on *Sherrod v. Philadelphia Gas Works*, 57 F. App'x 68 (3d Cir. 2003), in which the Third Circuit upheld summary judgment dismissing an FMLA complaint because the plaintiff's request for leave in order to care for her grandmother had not specified "that her grandmother had raised her," *see id.* at 72. The regulation applied in that case, however, was § 825.208(a)(1), which required the employee to "'explain the reasons for the needed leave so as to allow the employer to determine that the leave *qualifies* under the Act,'" 57 F. App'x at 72 (quoting 29 C.F.R. § 825.208(a)(1) (2002) (emphasis ours)). Section 825.208(a)(1) was withdrawn effective January 16, 2009; and although it was revised and renumbered 825.301, the revised version adds the caveat that the employee's notice must "satisfy the notice requirements set forth in § 825.302 or § 825.303," 29 C.F.R. § 825.301(b) (2009).

Section 825.303, the regulation relevant to Coutard, required him initially, as discussed above, only to provide sufficient information to indicate that the FMLA "may" apply.

B. *The Sufficiency of Coutard's Notice*

There can be no serious question that an employee's request for leave to care for his seriously ill grandfather seeks leave that "may" qualify for FMLA protection. Although MCU argues that it was not required to inquire as to whether Coutard had a "[u]nique" relationship with his grandfather (MCU brief on appeal at 27), a grandparent's raising of a child *in loco parentis* is hardly unique. The very reason that Congress in the FMLA defined "parent" and "son or daughter" to include, respectively, "*an individual who stood in loco parentis to an employee* when the employee" was "under 18 years of age," 29 U.S.C. §§ 2611(7) & 2611(12)(A) (emphasis added), and "a child of a person standing in loco parentis," 29 U.S.C. § 2611(12), was to "reflect *the reality* that *many children* in the United States today *do not* live in traditional 'nuclear' families with their biological father and mother," and are increasingly raised by others including "their grandparents," S. Rep. No. 103-3, at 22 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 24 (other internal quotation marks omitted (emphases ours)).

Indeed, MCU, in support of its summary judgment motion, submitted a July 2010 DOL "Fact Sheet #28C"--attached to the Motzenbecker Declaration as Exhibit K--titled "FMLA leave to care for a parent with a serious health condition on the basis of an *in loco parentis* relationship." That general-information document stated that

> [i]n enacting the FMLA, Congress recognized the changing needs of the American family, including the growing need for wage earners to provide care both for their children and for their parents.
>
> This Fact Sheet provides guidance on an employee's entitlement to FMLA leave to care for an individual who stood *in loco parentis* to the employee when the employee was a child. . . .
>
> . . . .

18

**Examples of *in loco parentis***

> Examples of situations in which FMLA leave to care for a parent may be based on an *in loco parentis* relationship include:

> . . . .

> *An employee may take leave to care for her grandmother with a serious health condition if the grandmother assumed responsibility for raising the employee after the death of her parents when the employee was a child.*

DOL Fact Sheet #28C at 1-2 (emphasis added). Both the express provisions in the FMLA for coverage with respect to *in loco parentis* relationships and the express example of a grandmother in the publication available to employers on the DOL website--submitted to the district court by MCU-- made it reasonable for MCU to understand that Coutard's request for leave in order to take care of his seriously ill grandfather might come within the FMLA.

We conclude that the district court erred in ruling that Coutard's notice to MCU was deficient because he did not specify the *in loco parentis* relationship with his grandfather at or before the time he requested FMLA leave, and in ruling that MCU was entitled as a matter of law to deny Coutard FMLA leave without requesting additional information.

C. *MCU's Alternative Grounds for Affirmance*

MCU contends that we can affirm the judgment dismissing the complaint on alternative grounds, including Coutard's alleged failure to provide certification that Dumond had a serious health condition and his failure to mitigate damages. These contentions are meritless.

In urging that the complaint was properly dismissed because Coutard failed to proffer medical proof of Dumond's health, MCU relies on the FMLA provision that "[a]n employer may

19

require that a request for leave under" 29 U.S.C. § 2612(a)(1)(C) for a "parent['s]" serious health condition "be supported by a certification issued by the [relevant] health care provider," 29 U.S.C. § 2613(a). However, "[u]nder the FMLA, an employee seeking leave need not submit a medical certification *unless and until one is specifically requested by her employer*." *Graziadio*, 817 F.3d at 426 (emphasis in original). Although the record indicates that MCU may have requested evidence of Dumond's health in suggesting that Coutard apply for leave that would not be protected by the FMLA, it does not indicate that MCU made any request pursuant to the FMLA. Instead, "MCU informed Coutard that . . . the statute does not apply to grandparents . . . ." (MCU's Rule 56.1 Statement ¶ 12.) MCU not having requested information pursuant to the FMLA--and having wrongly indicated to Coutard that the FMLA cannot be applied to a grandfather--MCU is not entitled to defend this FMLA claim on the ground that Coutard did not provide information that the FMLA would have required if MCU had requested it.

In urging that Coutard failed to mitigate damages, MCU relies principally on the fact that he did not accept MCU's conditional offer of reinstatement. MCU's letter communicating that offer, however--sent by its attorneys to Coutard's attorney after the commencement of the present lawsuit (*see* Motzenbecker Declaration ¶ 5)--proposed a "resolution of the case . . . without an admission of fault or liability on the part of either party" (*see id*. Exhibit D). Such an offer could not properly be the basis for affirmance of summary judgment, as "[t]he evidence considered on summary judgment must generally be admissible evidence," *LaSalle Bank National Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005); *see* Fed. R. Civ. P. 56(c)(4) ("declaration used to support or oppose a motion [for summary judgment] must . . . set out facts that would be admissible in evidence"), and offers of compromise are not admissible in evidence to "disprove the validity *or*

*amount* of a disputed claim," Fed. R. Evid. 408(a) (emphasis added). MCU's offer is inadmissible for the purpose proffered here. The letter offered reinstatement in exchange for settlement of the pending lawsuit; it stated that it was being sent "[p]ursuant to FED. EVID. R. 408"; and it is proffered here with respect to the amount of damages Coutard could receive.

MCU's other contentions in support of the grant of summary judgment in its favor have no greater merit and do not warrant discussion.

D. *Coutard's Request for Partial Summary Judgment in His Favor*

We also reject Coutard's contention that because MCU failed in its obligations (a) to provide him with notice of his right to seek FMLA leave under the Act's *in loco parentis* provision, and (b) to request further information from him upon his request for leave, he was entitled to partial summary judgment in his favor on the issue of liability. The fact that both sides have moved for summary judgment does not guarantee that there is no material issue of fact to be tried and that one side or the other is entitled to that relief. *See, e.g.*, *Eastman Machine Co. v. United States*, 841 F.2d 469, 473 (2d Cir. 1988). In considering such motions and determining whether there is a genuine issue of fact to be tried, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Board of Education*, 667 F.2d 305, 314 (2d Cir. 1981); *see, e.g.*, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (the evidence must be viewed in the light most favorable to the party opposing the motion under consideration).

Here, in addition to the unresolved issue of whether the state of Dumond's health met FMLA standards, MCU did not in fact concede the truth of Coutard's assertions that Dumond had

21

raised him *in loco parentis*. Rather, it objected to the *in loco parentis* characterization as asserting a conclusion of law (*see* MCU's Rule 56.1 Counterstatement ¶ 14) and denied knowledge or information as to the truth of the underlying factual assertions (*see id*. ¶¶ 17-24). Thus, although it was proper for the district court to accept Coutard's assertions as true when it was deciding the summary judgment motion of MCU, it could not properly accept them as true in deciding the motion by Coutard. A jury would not be compelled to accept such testimony by Coutard; his credibility is a matter for assessment by the factfinder; and his childhood relationship with Dumond remains one of the issues for trial.

## CONCLUSION

We have considered all of MCU's arguments in support of the judgment and all of Coutard's arguments in support of his request for partial summary judgment in his favor, and have found in them no merit. The judgment dismissing the complaint is vacated; the matter is remanded for further proceedings not inconsistent with this opinion.